Adrian RODRIQUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–93–00832–CR.

Court of Appeals of Texas, Dallas.

June 6, 1994.

David M. Hall, Dallas, for appellant.

Yolanda M. Joosten, Dallas, for appellee.

Before BAKER, OVARD and MALONEY, JJ.

## OPINION

MALONEY, Justice.

The trial court convicted Adrian Rodriquez of delivery of cocaine, assessed a fifteen year sentence and a $1000 fine, and found that appellant used or exhibited a deadly weapon during the commission of the offense. In two points of error, appellant asserts: (1) the trial court erred in denying his motion to quash the State's special plea of use or display of a deadly weapon; and (2) the evidence was insufficient to support the deadly weapon finding. We reform the trial court's judgment to delete the deadly weapon finding. We affirm the trial court's judgment as reformed.

## PROCEDURAL BACKGROUND

The grand jury indicted appellant for delivery of cocaine. The indictment did not allege a deadly weapon. The State filed a separate document setting forth its intent to seek a deadly weapon finding. Appellant filed a motion to strike the State's deadly weapon allegation. He asserted that such an allegation was factually inappropriate to his case.

Appellant entered a plea of not guilty.[1] He moved to quash the State's deadly weapon allegation. The trial court denied appellant's motion. Jury selection began. After the lunch recess, appellant changed his plea. He pleaded no contest, executed a judicial confession to the offense as alleged in the indictment, and waived jury.

## FACTUAL BACKGROUND

Kevin Willis, an undercover narcotics officer was investigating drug dealing complaints in an apartment complex. Willis knocked on the door of one of the suspect apartments. When appellant answered the door, he motioned for Willis to enter the apartment. Willis told appellant that he needed "two caps."[2]

Appellant took Willis's twenty dollars. Appellant then said he had to go upstairs to get the "stuff" because they were out downstairs. Appellant returned a few minutes later and told the officer "Man, you're not gonna like this, but this is all they had left." Appellant had a single capsule in his hand. Willis complained that the single capsule did not look like twenty dollars' worth of cocaine. Appellant and Willis argued about the quantity of cocaine. Eventually, appellant told the officer to "come back in twenty minutes, by then we'll—the delivery would have been here and I'll be able to give you the other cap that I owe you." Willis agreed to come back.

Willis left the apartment. He had the drug tested. It was cocaine.

About an hour later, Willis returned to the apartment. This time another man opened the door. Appellant was sitting on the floor of the apartment. The man who opened the door asked Willis what he needed. In response, Willis turned to appellant and said, "Hey, you know, you remember me? I came

---

1. Initially, appellant wanted to plead no contest and challenge the deadly weapon allegation. Appellant's trial counsel and the trial court expressed concern about whether appellant could "split" his plea.

2. Willis explained that "two caps" translated to twenty dollars' worth of cocaine.

here to get that cap you owe me." Appellant acted like he did not recognize Willis. The second man then offered to share a rock of cocaine with Willis in the other room. Willis repeated his demand for the second "cap." Appellant stood up, pulled out a handgun, and pointed it at Willis. Appellant accused Willis of being a cop. The other man told Willis to leave. Willis left without identifying himself as a police officer or attempting to arrest or detain appellant.

## THE MOTION TO STRIKE

■ In his first point of error, appellant asserts that the trial court erred in denying his motion to strike the State's deadly weapon allegation. A guilty or nolo contendere plea entered without a plea bargain agreement waives all nonjurisdictional defects or errors that occur before the entry of the plea. *Helms v. State*, 484 S.W.2d 925, 927 (Tex.Crim.App.1972); *Soto v. State*, 837 S.W.2d 401, 403 (Tex.App.—Dallas 1992, no pet.).

■ The trial court denied appellant's motion to strike before he entered his open plea of no contest. This deadly weapon allegation is nonjurisdictional. Appellant waived any complaint he may have had about the trial court's denial of his motion to strike. We overrule appellant's first point of error.

## SUFFICIENCY OF THE EVIDENCE— DEADLY WEAPON

In his second point of error, appellant asserts that the evidence was insufficient to show that he "used or displayed a deadly weapon" in the course of or in immediate flight from the indicted offense. He asks that we delete the deadly weapon finding and remand the case for sentencing.

. Appellant does not deny that he possessed and displayed a deadly weapon during the officer's second visit to the apartment. But he contends that the indictment does not charge him with any illegal conduct during the officer's second visit. The State argues that the two visits constituted a single criminal episode.

### 1. Standard of Review

■ When an appellant challenges the sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution. *Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim.App.1993) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jones v. State*, 833 S.W.2d 118, 122 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993). We find the evidence sufficient to sustain the conviction if the collective weight of all the incriminating circumstances warrants the conclusion. *Livingston v. State*, 739 S.W.2d 311, 330 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

■ The fact finder is the sole judge of the witnesses' credibility and their testimonial weight. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The fact finder may reject all or part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The fact finder need not believe even uncontroverted testimony. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex.Crim.App. [Panel Op.] 1978). The fact finder may draw reasonable inferences from the evidence. *Benavides v. State*, 763 S.W.2d 587, 588–89 (Tex.App.—Corpus Christi 1988, pet. ref'd).

■ We do not disturb the fact finder's decision unless it is irrational or supported by only a "mere modicum" of evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). We do not substitute our judgment for that of the fact finder. *Tompkins v. State*, 774 S.W.2d 195, 202 (Tex.Crim.App.1987), *aff'd*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989) (4–4 decision).

### 2. Applicable Law

■ Texas law authorizes a deadly weapon finding when the evidence proves that a defendant: (1) used or exhibited a deadly weap-

on during the commission of a felony offense or during immediate flight therefrom; or (2) was a party to an offense and knew that a deadly weapon would be used or exhibited. TEX.CODE CRIM.PROC.ANN. art. 42.12, § 3g (Vernon Supp.1994). The State must show that the deadly weapon facilitated the commission of the associated felony. *Narron v. State,* 835 S.W.2d 642, 644 (Tex.Crim.App. 1992); *Ex parte Petty,* 833 S.W.2d 145, 145–46 (Tex.Crim.App.1992).

■ When each element of an offense has occurred, the crime is complete. *Barnes v. State,* 824 S.W.2d 560, 562 (Tex.Crim.App. 1991). A person commits the offense of delivery of cocaine if he intentionally or knowingly delivers cocaine. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon Supp. 1994). We apply the doctrine of continuing offenses only when the legislature explicitly creates a continuing offense. *Barnes,* 824 S.W.2d at 562.

### 3. Application of Law to Facts

■ The indictment charged appellant with a sale of drugs. The trial court convicted appellant of delivering drugs. The testimony is undisputed. Neither appellant nor anyone else displayed or exhibited a firearm during the officer's first visit to the apartment—when the delivery occurred. During the officer's second visit to the apartment, appellant displayed the gun. The officer received no cocaine, nor did appellant deliver or offer to deliver any drugs, during the officer's second visit.

When appellant asked Willis if he "had a complete case . . . on [appellant] for delivery of cocaine" after his first visit to the apartment, he answered, "Yes, ma'am." Although Willis testified it did not look like a "twenty" to him, he also testified that he went back to the apartment to establish his credibility and involve as many people as possible. An officer's expectation of another cocaine delivery on a second visit is not sufficient to link the two visits together as a single criminal episode.

The dissent argues that the drug sale was ongoing and appellant "used the firearm to help him make more profit, rather than turn

over the additional cocaine as he had agreed." Dis. op. at 448 (Ovard, J., dissenting). If we accept the dissent's rationale, then appellant used the gun to facilitate a theft—an aggravated robbery. Appellant was charged with delivery of cocaine—not aggravated robbery.

We conclude that appellant did not use or display a deadly weapon during the commission of, or immediately after the commission of, the felony for which he was charged. Nor did he use or display a deadly weapon to facilitate the charged felony's commission. Just the opposite, he used the gun to make the officer leave the apartment. We sustain appellant's second point of error.

### REMAND OR REFORM?

■ The trial court's finding that appellant used or displayed a deadly weapon did not alter the range of punishment. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon Supp.1994) (defining offense of delivery of cocaine and setting forth punishment ranges); *see also Lockett v. State,* 874 S.W.2d 810 (Tex.App.—Dallas 1994, pet. denied) (opinion on reconsideration on petition for discretionary review) (remanding for sentencing because deletion of deadly weapon finding changed offense from aggravated robbery to robbery and attendant punishment range). Because deletion of the deadly weapon finding in this case does not affect the range of punishment, we need not remand for sentencing. *Narron,* 835 S.W.2d at 644 (deleting deadly weapon finding, affirming judgment, but not remanding for sentencing); *Petty,* 833 S.W.2d at 146 (deleting deadly weapon finding, affirming judgment, but not remanding for sentencing).

We reform the trial court's judgment to delete the deadly weapon finding. As reformed, we affirm the trial court's judgment.

OVARD, J., dissents with opinion.

OVARD, Justice, dissenting.

I respectfully dissent. I disagree with the majority's conclusion that the trial court lacked sufficient facts to find that the appellant displayed or exhibited a firearm during

the commission of the delivery of cocaine offense.

## APPLICABLE LAW

As the majority acknowledges, the test is whether the testimony showed that the deadly weapon facilitated the commission of the associated offense. *See Narron v. State*, 835 S.W.2d 642, 644 (Tex.Crim.App.1992); *Jackson v. State*, 857 S.W.2d 678, 682 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). The weapon must be utilized to achieve an intended result, namely, the commission of a felony. *See Jackson*, 857 S.W.2d at 682. The issue is whether a rational trier of fact could determine from the evidence that appellant used or exhibited a firearm to facilitate, help, or assist in the commission of the delivery of cocaine offense. *See Osborne v. State*, 832 S.W.2d 407, 409 (Tex.App.—Houston [14th Dist.] 1992, no pet.).

## APPLICATION OF LAW TO FACTS

In this case, the associated offense charged in the indictment was that appellant did "deliver, to wit: transfer, constructively transfer, and offer to sell a controlled substance, namely: COCAINE in an amount of less than 28 grams to K. Willis." The case involves two visits by undercover Officer Willis to the apartment where he confronted appellant on each occasion.

I believe the facts, when viewed in the light most favorable to the verdict, support the affirmative finding that a deadly weapon was used during the commission of the delivery of cocaine offense. This is so because I conclude the facts show a *continuation* of the delivery offense through Willis's second visit, including that point in time when appellant leveled a firearm at the officer.

Relevant facts supporting this conclusion for each visit include the following:

*First Visit.* Officer Willis testified that after appellant directed him inside the apartment, he followed appellant inside and told him he needed "two caps." Willis said he meant by this, twenty dollars' worth of cocaine. He gave appellant twenty dollars and appellant told Willis to stay there and he would be right back. Appellant returned only a few minutes later with one cap. Appellant told Willis, "Man, you're not gonna like this, but this is all they had left." Willis told appellant it did not appear to be twenty dollars' worth. Willis said they argued about the amount. Appellant then instructed Willis to come back in about twenty minutes. He said by that time, the delivery would have arrived and appellant would then "be able to give you *the other cap that I owe you.*" Appellant did not return any money to Willis. Willis agreed to appellant's offer and left the apartment with the one cap of cocaine that appellant had delivered to him.

*Second Visit.* At trial, the prosecutor asked Willis, "Did you eventually go back for the rest of the—to finish the rest of this cocaine deal?" Willis answered, "Yes, ma'am." He explained that about an hour after the first visit, he knocked on the door of the same apartment. Another male answered the door and asked Willis what he needed. Willis saw appellant sitting on the floor wearing a trenchcoat. Willis testified he turned to appellant and said "Hey, you know, you remember me? I came here to get that cap you owe me." He reminded appellant that appellant had told him during their first encounter to come back and Willis would receive the additional cap.

Willis said that at that point, the other male offered to share a "rock" of cocaine with Willis. Willis declined and again asked for the cocaine owed him. At this time, appellant stood up, pointed a small caliber pistol at Willis's nose and accused Willis of being a "cop." Willis denied being a cop, and said he was there to pick up the cocaine owed to him by appellant. Then, the other male opened the door and told Willis to leave. Appellant warned Willis, "don't come back cop." Willis then left the apartment.

## DISCUSSION AND CONCLUSION

I am persuaded that a rational fact finder could conclude from these facts that a single offense occurred, which was comprised of both encounters between appellant and Officer Willis. On the record before us, I would hold that the fact finder could reasonably find that the delivery of cocaine was ongoing, and continued when Willis confronted appel-

lant about the remaining promised cocaine during the second visit. Appellant exhibited the firearm at that time to consummate the drug delivery transaction to his advantage. In other words, he used the firearm to help him make more profit, rather than turn over the additional cocaine as he had agreed. Appellant's use of the firearm also facilitated the delivery scheme by ridding the apartment of a suspected undercover "cop."

The majority bases their reasoning on the facts that Willis had completed the delivery offense after his first visit and Willis said he went back to the apartment the second time to establish his credibility and to involve as many people as possible. From these isolated facts the majority concludes appellant did not use the deadly weapon to *facilitate*, but rather "just the opposite, he used the gun to make the officer leave the apartment."

I believe the majority's conclusion impermissibly displaces the trial court's rational finding by ignoring Willis's testimony that (1) appellant admitted he only delivered part of the drugs owed Willis during the first visit; (2) at the first visit appellant offered to complete the delivery of the second cap when Willis returned; (3) during the second visit, when appellant's offer to deliver the second cap was still unconcluded, appellant displayed the gun in order to force Willis, the suspected undercover "cop", to leave; and (4) appellant displayed the gun in order to retain the twenty dollars from Willis without completing delivery of the amount of cocaine agreed upon. The majority holds that an officer's expectation of another cocaine purchase on a second visit is not sufficient to link the two visits together as a single criminal episode. However, the record shows the officer's actual expectation was not to make an *additional* purchase, but to *complete* the delivery of the cocaine case then in progress.

The following redirect testimony of Willis best illustrates why the fact finder could properly have found an ongoing delivery transaction when appellant exhibited the firearm:

Prosecutor: When you went there the first time you paid for twenty dollars' worth of crack cocaine—I mean powder cocaine; is that correct?

Willis: Yes, ma'am.

Prosecutor: And you received half of that delivery—

Willis: Yes, ma'am.

Prosecutor: —or half of that requested amount of cocaine the first time.

Willis: Right. Yes, ma'am.

Prosecutor: And when you returned it was to get the other half of what was requested when you went there the very first time.

Willis: Yes, ma'am.

Consequently, I would overrule appellant's points of error, and affirm the trial court's judgment that appellant used and exhibited a deadly weapon during the commission of the offense. *See Wynn v. State*, 847 S.W.2d 357, 360 (Tex.App.—Houston [1st Dist.]), *aff'd*, 864 S.W.2d 539 (Tex.Crim.App.1993). *Osborne*, 832 S.W.2d at 409.