COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                          NO.
02-08-029-CR

 

 

DAVID SCOTT MUSGROVE, II                                               APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

               FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------

I. 
Introduction

In six points, Appellant David Scott Musgrove, II
appeals his conviction for possession of methamphetamine, four grams or more
but less than 200 grams, with intent to deliver.  We affirm.

 








II. 
Factual and Procedural History

On August 12, 2004, Narcotic Agent Jack Jones
along with ten other agents entered Musgrove=s house
under a search and arrest warrant.  Jones
observed Musgrove, a heavy sleeper, in bed with a girl and saw two firearms on
a dresser within Musgrove=s reach.  Officers testified that Musgrove awoke and
appeared to be reaching toward the loaded guns before being straddled by
Officer Jones and arrested.  The girl, AMisty,@
testified at trial that she was asleep on the side of the bed closest to the
dresser and did not see Musgrove, who did not testify at trial, reach for the
guns.  She also testified that
methamphetamine had been sold from the house between 2004 and 2006.  A search warrant yielded:

$               
two loaded firearms on the dresser within
Musgrove=s reach;

$               
a gun safe with eleven or twelve rifles inside; 

$               
drug paraphernalia including a meth bowl pipe;

$               
stolen inspection stickers on two vehicles on the
property;

$               
a stolen laptop computer;

$               
body armor;

$               
a painted plywood depiction of a marijuana leaf,
hanging on the wall; 

$               
inspection stickers stolen from Hogan=s
Jiff-E-Lube;








$               
a computer scanner and printer, along with evidence of counterfeiting
currency;

 

$               
scales;

$               
a stun gun;

$               
a surveillance camera;

$               
$65,000 worth of stolen jewelry;

$               
a pair of night vision binoculars in the gun
cabinet;

$               
small ziploc bags;

$               
a credit card terminal; and

$               
a Ronson butane lighter.

Musgrove pleaded guilty before the jury to
possession of more than four and less than 200 grams of methamphetamine with intent
to deliver.  The only issues before the
jury were punishment and whether Musgrove used or exhibited a deadly weapon in
the commission of the offense.

Jones testified as to the events that occurred on
August 12, 2004.  The State also
introduced evidence of a second search warrant executed on March 7, 2006.  The second search warrant yielded:

$               
a surveillance camera;

$               
marijuana Aclippings@;

$               
a pistol and a shotgun;








$               
the odor of burning marijuana; and

$               
part of a Ablunt,@ found
in the bedroom.

The State also entered into evidence, over
Musgrove=s
objection, State=s exhibit 66, which was a
photograph of a sign painted on Musgrove=s fence
that appeared one week after the execution of the March 7, 2006 search warrant
when Musgrove was in jail.  The sign read
AFU-Q
Jones, Gr[een], and Norris.@ Jones,
Green, and Norris were three agents involved in executing the August 12, 2004
search warrant.  The trial court
subsequently withdrew this exhibit, 
granted Musgrove=s request for an instruction for
the jury to disregard, and denied Musgrove=s
request for a mistrial. 

After hearing all the evidence, the jury found
beyond a reasonable doubt that a deadly weapon was used during the commission
of the offense of possession with intent to deliver and recommended punishment
at sixty years= confinement and a fine of
$10,000, which the trial court assessed. 
This appeal followed.

III. Deadly Weapon








In his first point, Musgrove asserts that the
evidence was insufficient to find that he used or exhibited a deadly
weapon.  It is unclear from the wording
of his point, the briefing, and the prayer for relief whether Musgrove is
asserting a factual or legal insufficiency point.  We shall address both in the interest of
justice.

A.  Standard of Review  

In reviewing legal sufficiency, we must view the
evidence Ain the light most favorable to
the prosecution@ and determine whether Aany
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.@  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979).  For
evidence to be legally sufficient to sustain a deadly weapon finding, the
evidence must show: (1) the object meets the statutory definition of a
dangerous weapon, (2) the deadly weapon was used or exhibited during the
commission of the offense, and (3) other people were put in actual danger.  Drichas v. State, 175 S.W.3d 795, 798
(Tex. Crim. App. 2005).








When reviewing the factual sufficiency of the
evidence to support a deadly weapon finding, we view all the evidence in a
neutral light, favoring neither party.  Id.
at 799; see Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).  We then ask whether the evidence
supporting the finding, although legally sufficient, is nevertheless so weak
that the fact-finder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the finding that the factfinder=s
determination is manifestly unjust.  See
Watson, 204 S.W.3d at 414B15, 417;
Drichas, 175 S.W.3d at 799; Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000). 

B.  Analysis

A deadly weapon is defined as Aa
firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury.@  Tex. Penal Code Ann. '
1.07(17)(A) (Vernon Supp. 2008).  A
deadly weapon finding by the trier of fact may be made when it is proven that
the accused (1) used or exhibited a deadly weapon during the commission of a
felony offense or during immediate flight therefrom; or (2) was a party to an
offense and knew that the deadly weapon would be used or exhibited.  Tex. Code Crim. Proc. Ann. art. 42.12, ' 3g(a)(2) (Vernon Supp. 2008); Rodriguez
v. State, 880 S.W.2d 443, 445B46 (Tex.
App.CDallas
1994, pet. ref=d).  The State must show that the deadly weapon
facilitated the commission of the associated felony.  Rodriguez, 880 S.W.2d at 446.  








To Ause@ a
deadly weapon during the commission of an offense means that the deadly weapon
was employed or utilized in order to achieve its purpose; to Aexhibit@ a
deadly weapon requires only that it be consciously displayed during the
commission of the required felony offense. 
Patterson v. State, 769 S.W.2d 938, 940B41 (Tex.
Crim. App. 1989); see also Coleman v. State, 145 S.W.3d 649, 655 (Tex.
Crim. App. 2004) (stating that A[t]he
real question is whether the weapons are found to have facilitated Appellant=s
possession and intended distribution of the drugs@); McCain
v. State, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (holding that butcher
knife partially concealed in appellant=s pocket
during attack was a deadly weapon used or exhibited in facilitating the
offense); Dimas v. State, 987 S.W.2d 152, 153B55 (Tex.
App.CFort
Worth 1999, pet. ref=d) (restating that Amere
possession is enough if it facilitates the associated offense@); cf.
Coleman, 145 S.W.3d at 658B60
(Cochran, J., concurring) (listing factors to consider in determining
sufficiency of the evidence to support a deadly weapon finding: type of gun
involved and whether it was loaded, gun=s
proximity to drugs or drug paraphernalia, gun=s
accessibility to whomever controls the premises, quantity of drugs involved,
and any evidence that might show an alternative purpose for gun=s
presence).  








Here, the two weapons, a .357 revolver and a .38
revolver, were found on the dresser next to Musgrove=s bed,
and Musgrove reached for them as Agent Jones announced his presence.  See Coleman, 145 S.W.3d at 659 n.14
(Cochran, J., concurring) (noting that automatic weapons or large‑bore
pistols are more likely to be connected to a drug transaction than a hunting
rifle or shotgun).  Both were
loaded.  See id. at 659 n.15
(Cochran, J., concurring).  Drugs and
drug paraphernalia were discovered throughout the premises, including digital
scales and large ziploc bags containing multiple smaller bags, which Jones
testified were the type of accoutrements associated with drug distribution.  See id. at 658B60
(Cochran, J., concurring).  Under the
appropriate standards of review and considering the statutory meaning of Aused or
exhibited@ as defined in the referenced
case law, we hold that the evidence is legally and factually sufficient to
support a finding that Musgrove used or exhibited a deadly weapon during the
commission of the charged offense of possession with intent to deliver, and we
overrule his first point.

IV. Mistrial

In his second and third points, Musgrove asserts
that trial court erred in admitting into evidence a sign painted on a fence at
Musgrove=s home
and not declaring a mistrial after striking the sign from evidence.  In his fifth and sixth points, Musgrove
asserts error on the part of the trial court in failing to grant a mistrial
after he objected to two of the State=s
arguments during closing arguments.  

A.  Standard of Review








A trial court=s denial
of a motion for mistrial is reviewed under an abuse of discretion
standard.  Simpson v. State, 119
S.W.3d 262, 272 (Tex. Crim. App. 2003), cert. denied, 542 U.S. 905
(2004); Wood v. State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).  Mistrial is appropriate for only Ahighly
prejudicial and incurable errors,@ and the
trial court is required to grant a motion for a mistrial only when the improper
evidence is Aclearly prejudicial to the
defendant and is of such character as to suggest the impossibility of
withdrawing the impression produced on the minds of the jurors.@  Simpson, 119 S.W.3d at 272; Wood,
18 S.W.3d at 648.  Ordinarily, a prompt
instruction to disregard will cure error. 
See Simpson, 119 S.W.3d at 272; Ovalle v. State, 13
S.W.3d 774, 783 (Tex. Crim. App. 2000). 
The effect of the curative instruction to disregard encompasses the
following factors:

$               
the severity of the misconduct, including the nature of the error,
the  persistence of the prosecutor in
committing the error, and the flagrancy of the violation; 

 

$               
the measures adopted to cure the misconduct, including the particular
instruction given; and

 

$               
the certainty of conviction absent the misconduct, including the
weight of the incriminating evidence.

 

Mosley v. State, 983 S.W.2d 249, 259B60 (Tex.
Crim. App. 1998), cert. denied, 526 U.S. 1070 (1999); Waldo v. State,
746 S.W.2d 750, 754 (Tex. Crim. App. 1988).

B.  The Sign








The admission of evidence, like the denial of a
motion for mistrial, is governed by an abuse of discretion standard.  Jones v. State, 963 S.W.3d 177, 182
(Tex. App.CFort Worth 1998, pet. ref=d).  The sign in question read, AFU Q,
Jones, Gr[een], Norris,@ the three names being those of the
agents executing the second search warrant. 
A photograph of the sign was initially admitted into evidence.  After cross-examination of Officer Norris, in
which Norris revealed that he did not know who painted the fence and that
Musgrove had been in jail since the execution of the second search warrant and
remained confined when the sign was discovered, the trial court ordered the
exhibit stricken, instructed the jury to disregard the evidence, and denied
Musgrove=s motion
for mistrial. 








Assuming without deciding that it was error to
admit the photograph of the sign on the fence, any error is rendered moot by
the trial court=s actions of striking the
exhibit and instructing the jury to disregard it and to not consider it as
evidence in the case.  With respect to
the trial court=s refusal to grant a mistrial,
having reviewed the evidence presented by the State as previously recounted and
applying the appropriate standard of review, we cannot say that the character
of the photograph suggested the impossibility of withdrawing the impression it
produced on the minds of the jurors despite the instruction to disregard.  See Mosley, 983 S.W.2d at 259; Kimball
v. State, 24 S.W.3d 555, 562 (Tex. App.CWaco
2000, no pet.) (applying factors).  We
therefore hold that the instruction to disregard cured any harm and overrule
Musgrove=s second
and third points.[2]

C.  Closing Arguments

During the State=s
rebuttal in closing arguments, the prosecutor made the following statement: Ait=s very
clear that they [the officers executing the search warrant] know that this
Defendant has a bad reputation, and you=ve heard
testimony of the officers.  It=s very
clear to these police officers, and to you from the testimony that this
Defendant has a very bad reputation in our community.@[3] 








At this point, Musgrove objected that the
argument was outside the evidence, and the trial court sustained his objection
and instructed the jury to disregard the argument.  The trial court denied his motion for
mistrial based on this argument.  

Shortly thereafter, Musgrove objected to another
of the prosecutor=s statements, that AWe have
to take [a] stand against these drug dealers that are turning our neighborhoods
and our streets into war zones, filling up our jails, increasing our taxes,
ruining our environment.@[4]  Musgrove objected that the argument was
outside the record and requested a mistrial. 
The trial court sustained this objection, instructed the jury to
disregard the argument, and denied Musgrove=s motion
for mistrial.

As discussed above, when the trial court sustains
an objection and instructs the jury to disregard but denies a defendant=s motion
for a mistrial, the issue is whether the trial court abused its discretion in
denying the mistrial.  Hawkins v.
State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  Only in extreme circumstances, when the
prejudice caused by the improper argument is incurable, i.e., Aso
prejudicial that expenditure of further time and expense would be wasteful and
futile,@ will a
mistrial be required.  Id.; see also
Simpson, 119 S.W.3d at 272; Mosley, 983 S.W.2d at 259.








Assuming without deciding that error occurred,
having reviewed the evidence in its entirety and based on the appropriate
standard of review, we cannot say that the prosecutor=s
remarks were of such character as to Asuggest
the impossibility of withdrawing the impression produced on the [minds of the
jurors].@  See Davis v. State, 894 S.W.2d 471,
475 (Tex. App.CFort Worth 1995, no pet.).  We therefore hold that the instructions to
disregard cured any harm caused by the two rebuttal arguments, and we overrule
Musgrove=s fifth
and sixth points.

V.  Hearsay

In his fourth point, Musgrove asserts error on
the part of the trial court in admitting hearsay evidence of extraneous drug
transactions during the punishment phase of trial.  Musgrove directs us to five places in the
record where objections were made.  None
of the objections were based on hearsay. 
Therefore, any hearsay objection made for the first time on appeal is
waived.

To the extent that Musgrove is complaining that
the trial court overruled his rule 404(b) objections, we note that such
evidence is admissible at punishment notwithstanding rule 404.  See Tex. Code Crim. Proc. Ann. art.
37.07, ' 3(a)(1).








To the extent that Musgrove complains that the
trial court erred by admitting the evidence because the State failed to prove
the extraneous acts beyond a reasonable doubt, we note that while the trial
court is to make a threshold determination of whether the jury could rationally
find beyond a reasonable doubt that an offense or bad act was committed, the
jury actually decides if the State met its burden of proof.  Mitchell v. State, 931 S.W.2d 950, 953B54 (Tex.
Crim. App. 1996); Nanez v. State, 179 S.W.3d 149, 151B52 (Tex.
App.CAmarillo
2005, no pet.).  Based on our review of
the evidence related to the execution of the second search warrant, we hold
that the trial court did not abuse its discretion by admitting the evidence.

Finally, to the extent that Musgrove complains
that the State failed to prove the extraneous acts beyond a reasonable doubt,
the Texas Court of Criminal Appeals has held that article 37.07, section 3(a)
does not require the State to necessarily prove that the act was a criminal act
or that the defendant committed a crime. 
Haley v. State, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005).  Instead, before the jury can consider the evidence
in assessing punishment, it must believe beyond a reasonable doubt that the
acts are attributable to the defendant.  Id.

The trial court instructed the jury,








You are instructed that if there
is evidence before you in this case regarding the Defendant having committed
other acts or participated in other transactions other than the offense alleged
against him in the indictment in this case, that you cannot consider such other
acts or transactions, if any, unless you first find and believe beyond a
reasonable doubt that the Defendant committed such acts or participated in such
transactions, if any, but if you do not so believe, or if you have a reasonable
doubt thereof, you will not consider such testimony for any purpose.

Musgrove has pointed to no evidence in the record that the jury
disobeyed this instruction.  Accordingly,
we overrule his fourth point.  

VI. 
Conclusion

Having overruled all of Musgrove=s
points, we affirm the trial court=s
judgment.  

BOB
MCCOY

JUSTICE

 

PANEL: DAUPHINOT, WALKER,
and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: December 18,
2008











[1]See Tex. R. App. P. 47.4.





[2]In passing, Musgrove
complains in a single sentence about the admission into evidence of the fruits
of the second search warrant, but without discussion or explanation.  In any event, article 37.07, section 3(a)(1)
of the code of criminal procedure allows evidence of reputation, character, and
circumstances of the offense and Aany matter the court deems relevant to
sentencing,@ and the fruits of the
second search warrant tended to show the house was still being used as a drug
delivery point a year and a half after the first search warrant was
executed.  See Tex. Code Crim.
Proc. Ann. art. 37.07, ' 3(a)(1) (Vernon Supp. 2008).





[3]The State attempted to
make this argument in response to Musgrove=s argument that the State did not Aeven bring you any other
evidence of bad character evidence [other than Musgrove=s 1999 DWI misdemeanor
conviction]. . . . None of [the officers] were called up, none of them
testified that he had a bad reputation in the community.  They didn=t bring you that.@





[4]The State made this
argument on rebuttal as part of its overall plea for law enforcement.