

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-08-029-CR

DAVID SCOTT MUSGROVE, II                                      APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In six points, Appellant David Scott Musgrove, II appeals his conviction for possession of methamphetamine, four grams or more but less than 200 grams, with intent to deliver. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

On August 12, 2004, Narcotic Agent Jack Jones along with ten other agents entered Musgrove's house under a search and arrest warrant. Jones observed Musgrove, a heavy sleeper, in bed with a girl and saw two firearms on a dresser within Musgrove's reach. Officers testified that Musgrove awoke and appeared to be reaching toward the loaded guns before being straddled by Officer Jones and arrested. The girl, "Misty," testified at trial that she was asleep on the side of the bed closest to the dresser and did not see Musgrove, who did not testify at trial, reach for the guns. She also testified that methamphetamine had been sold from the house between 2004 and 2006. A search warrant yielded:

- two loaded firearms on the dresser within Musgrove's reach;

- a gun safe with eleven or twelve rifles inside;

- drug paraphernalia including a meth bowl pipe;

- stolen inspection stickers on two vehicles on the property;

- a stolen laptop computer;

- body armor;

- a painted plywood depiction of a marijuana leaf, hanging on the wall;

- inspection stickers stolen from Hogan's Jiff-E-Lube;

- a computer scanner and printer, along with evidence of counterfeiting currency;

- scales;

- a stun gun;

- a surveillance camera;

- $65,000 worth of stolen jewelry;

- a pair of night vision binoculars in the gun cabinet;

- small ziploc bags;

- a credit card terminal; and

- a Ronson butane lighter.

Musgrove pleaded guilty before the jury to possession of more than four and less than 200 grams of methamphetamine with intent to deliver. The only issues before the jury were punishment and whether Musgrove used or exhibited a deadly weapon in the commission of the offense.

Jones testified as to the events that occurred on August 12, 2004. The State also introduced evidence of a second search warrant executed on March 7, 2006. The second search warrant yielded:

- a surveillance camera;

- marijuana "clippings";

- a pistol and a shotgun;

3

- the odor of burning marijuana; and

- part of a "blunt," found in the bedroom.

The State also entered into evidence, over Musgrove's objection, State's exhibit 66, which was a photograph of a sign painted on Musgrove's fence that appeared one week after the execution of the March 7, 2006 search warrant when Musgrove was in jail. The sign read "FU-Q Jones, Gr[een], and Norris." Jones, Green, and Norris were three agents involved in executing the August 12, 2004 search warrant. The trial court subsequently withdrew this exhibit, granted Musgrove's request for an instruction for the jury to disregard, and denied Musgrove's request for a mistrial.

After hearing all the evidence, the jury found beyond a reasonable doubt that a deadly weapon was used during the commission of the offense of possession with intent to deliver and recommended punishment at sixty years' confinement and a fine of $10,000, which the trial court assessed. This appeal followed.

### III. Deadly Weapon

In his first point, Musgrove asserts that the evidence was insufficient to find that he used or exhibited a deadly weapon. It is unclear from the wording of his point, the briefing, and the prayer for relief whether Musgrove is asserting

4

a factual or legal insufficiency point. We shall address both in the interest of justice.

**A. Standard of Review**

In reviewing legal sufficiency, we must view the evidence "in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). For evidence to be legally sufficient to sustain a deadly weapon finding, the evidence must show: (1) the object meets the statutory definition of a dangerous weapon, (2) the deadly weapon was used or exhibited during the commission of the offense, and (3) other people were put in actual danger. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005).

When reviewing the factual sufficiency of the evidence to support a deadly weapon finding, we view all the evidence in a neutral light, favoring neither party. *Id.* at 799; *see Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the finding, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the finding that the factfinder's determination is manifestly unjust. *See Watson*, 204 S.W.3d at

5

414–15, 417; *Drichas*, 175 S.W.3d at 799; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

## B. Analysis

A deadly weapon is defined as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." Tex. Penal Code Ann. § 1.07(17)(A) (Vernon Supp. 2008). A deadly weapon finding by the trier of fact may be made when it is proven that the accused (1) used or exhibited a deadly weapon during the commission of a felony offense or during immediate flight therefrom; or (2) was a party to an offense and knew that the deadly weapon would be used or exhibited. Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2008); *Rodriguez v. State*, 880 S.W.2d 443, 445–46 (Tex. App.—Dallas 1994, pet. ref'd). The State must show that the deadly weapon facilitated the commission of the associated felony. *Rodriguez*, 880 S.W.2d at 446.

To "use" a deadly weapon during the commission of an offense means that the deadly weapon was employed or utilized in order to achieve its purpose; to "exhibit" a deadly weapon requires only that it be consciously displayed during the commission of the required felony offense. *Patterson v. State*, 769 S.W.2d 938, 940–41 (Tex. Crim. App. 1989); *see also Coleman v. State*, 145 S.W.3d 649, 655 (Tex. Crim. App. 2004) (stating that "[t]he real

6

question is whether the weapons are found to have facilitated Appellant's possession and intended distribution of the drugs"); *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (holding that butcher knife partially concealed in appellant's pocket during attack was a deadly weapon used or exhibited in facilitating the offense); *Dimas v. State*, 987 S.W.2d 152, 153–55 (Tex. App.—Fort Worth 1999, pet. ref'd) (restating that "mere possession is enough if it facilitates the associated offense"); *cf. Coleman*, 145 S.W.3d at 658–60 (Cochran, J., concurring) (listing factors to consider in determining sufficiency of the evidence to support a deadly weapon finding: type of gun involved and whether it was loaded, gun's proximity to drugs or drug paraphernalia, gun's accessibility to whomever controls the premises, quantity of drugs involved, and any evidence that might show an alternative purpose for gun's presence).

Here, the two weapons, a .357 revolver and a .38 revolver, were found on the dresser next to Musgrove's bed, and Musgrove reached for them as Agent Jones announced his presence. *See Coleman*, 145 S.W.3d at 659 n.14 (Cochran, J., concurring) (noting that automatic weapons or large-bore pistols are more likely to be connected to a drug transaction than a hunting rifle or shotgun). Both were loaded. *See id.* at 659 n.15 (Cochran, J., concurring). Drugs and drug paraphernalia were discovered throughout the premises,

7

including digital scales and large ziploc bags containing multiple smaller bags, which Jones testified were the type of accoutrements associated with drug distribution. *See id.* at 658–60 (Cochran, J., concurring). Under the appropriate standards of review and considering the statutory meaning of "used or exhibited" as defined in the referenced case law, we hold that the evidence is legally and factually sufficient to support a finding that Musgrove used or exhibited a deadly weapon during the commission of the charged offense of possession with intent to deliver, and we overrule his first point.

## IV. Mistrial

In his second and third points, Musgrove asserts that trial court erred in admitting into evidence a sign painted on a fence at Musgrove's home and not declaring a mistrial after striking the sign from evidence. In his fifth and sixth points, Musgrove asserts error on the part of the trial court in failing to grant a mistrial after he objected to two of the State's arguments during closing arguments.

## A. Standard of Review

A trial court's denial of a motion for mistrial is reviewed under an abuse of discretion standard. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004); *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). Mistrial is appropriate for only "highly

prejudicial and incurable errors," and the trial court is required to grant a motion for a mistrial only when the improper evidence is "clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." *Simpson*, 119 S.W.3d at 272; *Wood*, 18 S.W.3d at 648. Ordinarily, a prompt instruction to disregard will cure error. *See Simpson*, 119 S.W.3d at 272; *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). The effect of the curative instruction to disregard encompasses the following factors:

- the severity of the misconduct, including the nature of the error, the persistence of the prosecutor in committing the error, and the flagrancy of the violation;

- the measures adopted to cure the misconduct, including the particular instruction given; and

- the certainty of conviction absent the misconduct, including the weight of the incriminating evidence.

*Mosley v. State*, 983 S.W.2d 249, 259–60 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999); *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988).

**B.  The Sign**

The admission of evidence, like the denial of a motion for mistrial, is governed by an abuse of discretion standard. *Jones v. State*, 963 S.W.3d 177, 182 (Tex. App.—Fort Worth 1998, pet. ref'd). The sign in question read, "FU

9

Q, Jones, Gr[een], Norris," the three names being those of the agents executing the second search warrant. A photograph of the sign was initially admitted into evidence. After cross-examination of Officer Norris, in which Norris revealed that he did not know who painted the fence and that Musgrove had been in jail since the execution of the second search warrant and remained confined when the sign was discovered, the trial court ordered the exhibit stricken, instructed the jury to disregard the evidence, and denied Musgrove's motion for mistrial.

Assuming without deciding that it was error to admit the photograph of the sign on the fence, any error is rendered moot by the trial court's actions of striking the exhibit and instructing the jury to disregard it and to not consider it as evidence in the case. With respect to the trial court's refusal to grant a mistrial, having reviewed the evidence presented by the State as previously recounted and applying the appropriate standard of review, we cannot say that the character of the photograph suggested the impossibility of withdrawing the impression it produced on the minds of the jurors despite the instruction to disregard. *See Mosley*, 983 S.W.2d at 259; *Kimball v. State*, 24 S.W.3d 555, 562 (Tex. App.—Waco 2000, no pet.) (applying factors). We therefore hold

10

that the instruction to disregard cured any harm and overrule Musgrove's

second and third points.[2]

## C. Closing Arguments

During the State's rebuttal in closing arguments, the prosecutor made the

following statement: "it's very clear that they [the officers executing the search

warrant] know that this Defendant has a bad reputation, and you've heard

testimony of the officers.  It's very clear to these police officers, and to you

from the testimony that this Defendant has a very bad reputation in our

community."[3]

At this point, Musgrove objected that the argument was outside the

evidence, and the trial court sustained his objection and instructed the jury to

---

[2] In passing, Musgrove complains in a single sentence about the admission into evidence of the fruits of the second search warrant, but without discussion or explanation.  In any event, article 37.07, section 3(a)(1) of the code of criminal procedure allows evidence of reputation, character, and circumstances of the offense and "any matter the court deems relevant to sentencing," and the fruits of the second search warrant tended to show the house was still being used as a drug delivery point a year and a half after the first search warrant was executed. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2008).

[3] The State attempted to make this argument in response to Musgrove's argument that the State did not "even bring you any other evidence of bad character evidence [other than Musgrove's 1999 DWI misdemeanor conviction]. . . . None of [the officers] were called up, none of them testified that he had a bad reputation in the community.  They didn't bring you that."

11

disregard the argument. The trial court denied his motion for mistrial based on this argument.

Shortly thereafter, Musgrove objected to another of the prosecutor's statements, that "We have to take [a] stand against these drug dealers that are turning our neighborhoods and our streets into war zones, filling up our jails, increasing our taxes, ruining our environment."[4] Musgrove objected that the argument was outside the record and requested a mistrial. The trial court sustained this objection, instructed the jury to disregard the argument, and denied Musgrove's motion for mistrial.

As discussed above, when the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion in denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Only in extreme circumstances, when the prejudice caused by the improper argument is incurable, i.e., "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Id.; see also Simpson,* 119 S.W.3d at 272; *Mosley*, 983 S.W.2d at 259.

---

[4] The State made this argument on rebuttal as part of its overall plea for law enforcement.

12

Assuming without deciding that error occurred, having reviewed the evidence in its entirety and based on the appropriate standard of review, we cannot say that the prosecutor's remarks were of such character as to "suggest the impossibility of withdrawing the impression produced on the [minds of the jurors]." *See Davis v. State*, 894 S.W.2d 471, 475 (Tex. App.—Fort Worth 1995, no pet.). We therefore hold that the instructions to disregard cured any harm caused by the two rebuttal arguments, and we overrule Musgrove's fifth and sixth points.

## V. Hearsay

In his fourth point, Musgrove asserts error on the part of the trial court in admitting hearsay evidence of extraneous drug transactions during the punishment phase of trial. Musgrove directs us to five places in the record where objections were made. None of the objections were based on hearsay. Therefore, any hearsay objection made for the first time on appeal is waived.

To the extent that Musgrove is complaining that the trial court overruled his rule 404(b) objections, we note that such evidence is admissible at punishment notwithstanding rule 404. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1).

To the extent that Musgrove complains that the trial court erred by admitting the evidence because the State failed to prove the extraneous acts

13

beyond a reasonable doubt, we note that while the trial court is to make a threshold determination of whether the jury could rationally find beyond a reasonable doubt that an offense or bad act was committed, the jury actually decides if the State met its burden of proof. *Mitchell v. State*, 931 S.W.2d 950, 953–54 (Tex. Crim. App. 1996); *Nanez v. State*, 179 S.W.3d 149, 151–52 (Tex. App.—Amarillo 2005, no pet.). Based on our review of the evidence related to the execution of the second search warrant, we hold that the trial court did not abuse its discretion by admitting the evidence.

Finally, to the extent that Musgrove complains that the State failed to prove the extraneous acts beyond a reasonable doubt, the Texas Court of Criminal Appeals has held that article 37.07, section 3(a) does not require the State to necessarily prove that the act was a criminal act or that the defendant committed a crime. *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). Instead, before the jury can consider the evidence in assessing punishment, it must believe beyond a reasonable doubt that the acts are attributable to the defendant. *Id*.

The trial court instructed the jury,

> You are instructed that if there is evidence before you in this case regarding the Defendant having committed other acts or participated in other transactions other than the offense alleged against him in the indictment in this case, that you cannot consider such other acts or transactions, if any, unless you first find and

14

believe beyond a reasonable doubt that the Defendant committed such acts or participated in such transactions, if any, but if you do not so believe, or if you have a reasonable doubt thereof, you will not consider such testimony for any purpose.

Musgrove has pointed to no evidence in the record that the jury disobeyed this instruction. Accordingly, we overrule his fourth point.

## VI. Conclusion

Having overruled all of Musgrove's points, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 18, 2008