# NO. 12-16-00228-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TRAVIS JAMES ROGERS,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Travis Rogers, Jr. appeals from his conviction for aggravated sexual assault of a disabled individual. In two issues, Appellant contends that the evidence is legally insufficient and the judgment is incorrect. We affirm the trial court's judgment as modified.

## BACKGROUND

The State charged Appellant with aggravated sexual assault of a disabled person. Appellant pleaded "not guilty."

At trial, J.J. testified that she was walking to lunch when an Ameritex truck stopped and the driver asked if she needed a ride. She accepted the offer. She identified Appellant as the driver. She testified that Appellant stopped at Time It Lube, and asked J.J. if she would give him a hug for giving her a ride. She agreed. J.J. testified that, when she hugged Appellant, he put his hand down her pants and touched her vagina. Appellant asked J.J. to get back in the truck so he could take her "down the road," but J.J. declined. After Appellant left, she went inside Time It Lube and the employees contacted the police. J.J. was seventeen years old at the time of the offense.

Michael Spier, the operating manager at Time It Lube, testified that he saw the Ameritex truck parked on the side of the building. He saw a man and a woman embracing, but noticed that

the woman's hands were hanging non-responsively by her side and the man's hand was inside the woman's pants. Spier identified Appellant as the man he saw. Shortly thereafter, the woman entered Time It Lube, and appeared disheveled, in shock, distant, nervous, and at a loss for what to say. She asked for help, and stated, "Somebody just touched me in a bad place." When Spier asked the woman if she had wanted the man to touch her, she replied "no." Spier called 9-1-1. He testified that he had seen the woman on other occasions and, based on how she walked and carried herself, it was fairly obvious that she has "special needs."

Officer Debra Daily with the Whitehouse Police Department testified that, when she arrived at Time It Lube, J.J. was crying, hysterical, and shaking. Daily transported J.J. and her mother to the police department, during which J.J. screamed, shook, and was very distraught and upset. Daily testified that J.J. cried off and on during the entire process.

Lieutenant Scott Bradley with the Whitehouse Police Department testified that he arranged for a forensic interview of J.J. by the Child Advocacy Center (CAC) because J.J. was seventeen and mentally handicapped. He felt an interview by CAC would be better because of J.J.'s maturity level. He testified that J.J.'s intelligence appeared to be below average. He also learned that she had been prescribed medication for epilepsy. He testified that the information he received was sufficient to meet the law's definition of a "disabled individual."

Jennifer Kelly with the CAC testified that she interviewed J.J., who appeared nervous and unkempt, and had some intellectual disabilities. Nor was J.J. able to articulate the difference between the truth and a lie. J.J. told Kelly about being offered a ride, driven to Time It Lube, and asked for a hug. She told Kelly that Appellant put his hand down her pants. Because J.J. struggled to identify which body part Appellant touched, Kelly showed her an anatomical drawing and had to help J.J. spell the word "vagina" on the drawing.

Dr. Noel Baker, J.J.'s doctor, testified that J.J. takes epilepsy medication and suffers from encephalopathy, which means that her brain does not work properly and she cannot function as well as other people. Dr. Baker testified that, although J.J.'s condition impacts her ability to adequately care for herself, this does not mean that she is non-functioning, unable to hold a job, or unable to live an independent life.

Doris Pitts, the executive director of special programs at Whitehouse Independent School District, testified that J.J. meets the criteria for pervasive developmental disorder (PDD), which falls under the autism spectrum. She testified that a person with autism based on PDD is

2

considered disabled for educational purposes.  She acknowledged that J.J. is functional.  Julie Smith, a licensed specialist in school psychology with the Whitehouse Independent School District, testified J.J. struggles to keep up with the classroom pace and understand what is expected of her.  Smith noticed that J.J. struggled with verbal instructions, watched her classmates for cues on what to do, fell behind the other students, and used more concrete than critical thinking.

At the conclusion of trial, the jury found Appellant guilty of aggravated sexual assault of a disabled person, and sentenced Appellant to imprisonment for eleven years.  This appeal followed.

<h1 style="text-align:center">SUFFICIENCY OF THE EVIDENCE</h1>

In his first issue, Appellant challenges the legal sufficiency of the evidence to support his conviction.  He contends that the State failed to prove that J.J. was a disabled individual.

## Standard of Review

When reviewing the sufficiency of the evidence, we determine whether, considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt.  *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id*.  We give deference to the jury's responsibility to fairly resolve evidentiary conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  Circumstantial evidence is as probative as direct evidence in establishing the accused's guilt. *Id*.

## Analysis

The State charged Appellant with intentionally and knowingly causing the penetration of the female sexual organ of J.J., a disabled person, with his hand and finger and without J.J.'s consent.  *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i), (2)(C) (West Supp. 2016).  A "disabled individual" is "a person older than 13 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect the person's self from harm or to provide food, shelter, or medical care for the person's self." *Id*. § 22.021(b)(3).

In this case, although the jury heard evidence that J.J. is functional, the jury also heard evidence that she suffers from both physical and mental defects, specifically, epilepsy and

autism. J.J.'s school records classify her as disabled, i.e., autistic. Additionally, the jury heard the following testimony: (1) based on his personal observations, Spier testified that J.J. obviously has "special needs," (2) Lieutenant Bradley testified that J.J. was handicapped, appeared to have below average intelligence, took epilepsy medication, and met the definition of a "disabled individual," (3) Kelly testified that J.J. had some intellectual disabilities, had difficulty identifying body parts without the aid of an anatomical drawing, and needed help spelling, (4) Dr. Baker testified that J.J. takes epilepsy medication, suffers from encephalopathy, and does not function as well as others, and that J.J.'s brain does not work properly, (5) Pitts testified that J.J. meets the criteria for PDD and is, therefore, a disabled person for educational purposes, and (6) Smith testified that J.J. struggles to keep up in class and understand verbal instructions, and does not think critically. Based on this evidence, and the fact that J.J. accepted a ride from a stranger, the jury could reasonably believe that J.J. suffers from a physical or mental disease or defect that renders her substantially unable to protect herself from harm. *See id.*; *see also **Morgan v. State***, 365 S.W.3d 706, 708-09 (Tex. App.—Texarkana 2012, no pet.) (finding evidence sufficient to support aggravated sexual assault of a disabled individual when jury could reasonably infer that complainant's mental disease prevented him from protecting himself from harm).

Accordingly, viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury was rationally justified in finding, beyond a reasonable doubt, that Appellant intentionally and knowingly caused the penetration of the female sexual organ of J.J., a disabled person, with his hand and finger and without J.J.'s consent. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i), (2)(C), (b)(3); *see also **Brooks***, 323 S.W.3d at 899. Because the evidence is legally sufficient to support Appellant's conviction for aggravated sexual assault of a disabled individual, we overrule issue one.

## JUDGMENT

In his second issue, Appellant maintains that the trial court's judgment incorrectly reflects a plea of "guilty" to the charged offense. At trial, Appellant pleaded "not guilty" to the offense of aggravated sexual assault of a disabled individual. The trial court's charge instructed the jury that Appellant pleaded "not guilty." However, the trial court's judgment states that Appellant pleaded "guilty." On appeal, Appellant asks this Court to reform the judgment to

4

reflect a plea of "not guilty." The State concedes that the judgment incorrectly reflects Appellant's plea.

We have the authority to modify the judgment to make the record speak the truth when we have the necessary data and information to do so. *Ingram v. State*, 261 S.W.3d 749, 754 (Tex. App.—Tyler 2008, no pet.); *Davis v. State*, 323 S.W.3d 190, 198 (Tex. App.—Dallas 2008, pet. ref'd). Texas Rule of Appellate Procedure 43.2 expressly authorizes an appellate court to modify the trial court's judgment. TEX. R. APP. P. 43.2(b). In this case, we have the necessary data and information to modify the judgment to reflect that Appellant pleaded "not guilty" to the charged offense. Accordingly, we sustain Appellant's second issue.

## DISPOSITION

Having overruled Appellant's first issue, but having sustained Appellant's second issue, we *modify* the judgment to replace "Guilty" with "Not Guilty" in the "Plea to Offense" portion of the judgment, and *affirm* the trial court's judgment as *modified*.

**GREG NEELEY**
Justice

Opinion delivered April 5, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 5, 2017**

**NO. 12-16-00228-CR**

**TRAVIS JAMES ROGERS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0183-16)

THIS CAUSE came on to be heard on the appellate record and the briefs filed herein; and the same being inspected, it is the opinion of the Court that the trial court's judgment below should be **modified and, as modified, affirmed**.

It is therefore ORDERED, ADJUDGED and DECREED that the trial court's judgment below be **modified to** replace "Guilty" with "Not Guilty" in the "Plea to Offense" portion of the judgment; **and as modified**, the trial court's judgment is **affirmed**; and that this decision be certified to the trial court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*