**Dean Michael DAVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

Nos. 05–06–01613–CR to 05–06–01620–CR.

Court of Appeals of Texas, Dallas.

Feb. 29, 2008.

Discretionary Review Refused Sept. 10, 2008.

17. *See* note 12, *ante.*

Gary A. Udashen, Sorrels, Udashen & Anton, Dallas, for appellant.

Dean Michael Davis, Beaumont, pro se.

Craig Watkins, Dallas County Dist. Atty., Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, for state.

Before Justices FITZGERALD, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice FITZGERALD.

Dean Michael Davis appeals eight convictions for various drug-possession offenses. Initially, appellant was charged with six offenses, to which he pleaded guilty, and the trial court deferred adjudication of guilt, placed appellant on community supervision for eight years, and assessed a $1000 fine in each case. Subsequently, appellant was indicted for possession of marijuana and methamphetamine. The State moved to revoke appellant's community supervision and adjudicate appellant guilty in the first six cases. The trial court found appellant guilty in the two new cases, adjudicated appellant guilty in the six earlier cases, sentenced appellant to two years in one case, ten years in two of the cases, and fifteen years in five of the cases, and the court found appellant used or exhibited a

deadly weapon in the two new cases. The trial court also assessed a $1500 fine in each of the two new cases. Appellant brings seven issues asserting the evidence is legally and factually insufficient to support (a) the revocation of his community supervision in the six earlier cases, (b) his convictions in the two new cases, and (c) the entry of the deadly weapon findings in the two new cases. Appellant also contends the State failed to give him notice of its intent to seek a deadly weapon finding in one of the new cases, and he contends the sentences constitute cruel and unusual punishment because he has AIDS. We affirm six of the judgments. In the remaining two cases, we modify the judgments to reflect the sentence pronounced in appellant's presence, and we affirm the judgments as modified.

### DEFERRED ADJUDICATION

■ In his first issue, appellant contends the evidence is legally insufficient to support the trial court's decision to revoke his community supervision and adjudicate him guilty. "No appeal may be taken from" the decision to adjudicate guilt. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 5(b) (amended 2007);[1] *Davis v. State*, 195 S.W.3d 708, 712 (Tex.Crim.App.2006); *Olowosuko v. State*, 826 S.W.2d 940, 942 (Tex. Crim.App.1992). Section 5(b) expressly permits appeal of proceedings occurring after the adjudication of guilt. TEX.CODE CRIM. PROC. ANN. art. 42.12, § 5(b). The revocation of community supervision as part of the decision to adjudicate guilt is not appealable. *See id.; Daniels v. State*, 615 S.W.2d 771, 771 (Tex.Crim.App. [Panel Op.] 1981) (appeal of probation revocation when guilt adjudicated following deferred adjudication barred by statute prohibiting appeal from determination to adjudicate guilt). Accordingly, we dismiss appellant's first issue for want of jurisdiction.

### SUFFICIENCY OF THE EVIDENCE

■ In the second, third, and fourth issues, appellant challenges the legal and factual sufficiency to support his convictions in the two new cases of possession of marijuana and methamphetamine. In determining the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex.Crim.App.2005). In a factual sufficiency review, we view all the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 415 (Tex.Crim.App.2006). To reverse a case on a factual sufficiency challenge, we

---

1. Before June 15, 2007, no appeal could be taken from the trial court's determination to adjudicate guilt. *See* Act of May 7, 1975, 64th Leg., R.S., ch. 231, § 1, 1975 Tex. Gen. Laws 572, 572–73, *amended by* Act of May 28, 2007, 80th Leg., R.S., ch. 1308, § 5, 2007 Tex. Gen. Laws 4395, 4397 (intervening amendments not included). Complaints could be raised regarding issues unrelated to the adjudication of guilt. *See Hargesheimer v. State*, 182 S.W.3d 906, 911 (Tex.Crim.App.2006). Effective June 15, 2007, article 42.12, section 5(b) was amended to provide for appellate review

of the decision to adjudicate guilt in the same manner as the revocation of regular community supervision under article 42.12, section 21. *See* Act of May 28, 2007, 80th Leg., R.S., ch. 1308, § 5, 2007 Tex. Gen. Laws 4395, 4397.

Appellant was adjudicated guilty before the effective date of the amendment; therefore, the amendment to article 42.12, section 5(b) does not apply to his appeal. *See* Act of May 28, 2007, 80th Leg., R.S., ch. 1308, §§ 5, 53, 2007 Tex. Gen. Laws 4395, 4397, 4413.

must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* at 417. In making a factual sufficiency review, a reviewing court is permitted to substitute its judgment for the jury's when considering credibility and weight determinations, but only "to a very limited degree." *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim. App.2006) (factual sufficiency jurisprudence still requires appellate court to afford "due deference" to jury's determinations).

■ On April 19, 2006, five police officers went to a house to investigate a complaint of drugs being sold there. As Officer Daniel Foster stood on the porch about to knock on the front door, he looked through a window in the door and saw in the living room a coffee table that had a crack pipe and what appeared to be methamphetamine sitting on it. The officers knocked on the door, and a young woman opened the door. Through the open door, Officer Mark Villareal saw appellant leave the back bedroom and come to the door. The officers asked the owner of the house, Rebecca Jackson, for permission to search the house, and she signed a written form giving her consent to search the house for drugs. The officers found methamphetamine under the sink in the bathroom next to the back bedroom. In the back bedroom, they found marijuana in plain view on the floor and a scale and packaging materials. It appeared to the officers that someone was packaging the marijuana when they arrived. The officers found two firearms in the closet of the back bedroom. The officers found appellant's clothing and briefcase in the house. When the officers mentioned they might look for fingerprints on the bags containing the marijuana, appellant told the officers his fingerprints might be on some of the bags as he had

moved them. Jackson told the officers appellant was staying at the house as a guest. The officers testified appellant told them he did not live there but he received mail there. The officers also testified Jackson told them "she'd overheard [appellant] talking on the phone about he was out of money because he had spent it all on marijuana or something to the effect."

Appellant testified he was released from jail on March 6, 2006 following his arrest for the other drug offenses. Appellant had all his possessions in his car. At the end of March, appellant's "ex" used a spare key to take appellant's car, which still contained all of appellant's possessions. On April 18, appellant's "ex" left the car and appellant's possessions at Jackson's house. Jackson contacted appellant and told him she had his car and possessions. On April 19, appellant went to Jackson's house to pick up his possessions, some of which were in the house. When appellant walked through the living room, there were no drugs on the coffee table. Appellant was gathering his possessions that were in the front bedroom when he realized he needed a box and there was a box outside. As appellant went out the front door, the officers grabbed his arm, led him to the sofa in the living room, and required him to stay on the sofa while the officers searched the house. He testified he did not hear the officers knock and that the officers made up the testimony about him coming from the back bedroom of the house. Appellant testified, "I never went in the back bedroom"; however, he also testified, "I had clothes in the back bedroom."

When appellant was asked about his statement that his fingerprints might be on the bags containing the marijuana, he testified the officers misinterpreted his statement. According to appellant's testimony, what he meant was that he had

moved a box of plastic bags in the kitchen. He testified he did not tell the officers he had touched any bags containing marijuana. Later, appellant testified he never told the officers his fingerprints might be "on stuff" and that the police had made that up.

 To establish appellant had knowing possession of the marijuana and methamphetamine, the State had to prove appellant exercised actual care, custody, control, or management over the drugs and that he knew the substances were contraband. *Poindexter v. State,* 153 S.W.3d 402, 405 (Tex.Crim.App.2005). "Whether this evidence is direct or circumstantial, 'it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called "affirmative links" rule.'" *Id.* (quoting *Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim.App.1995)). However, the court of criminal appeals has decided to change its terminology and refer to the concept of "affirmative links" as merely "links." *Evans v. State,* 202 S.W.3d 158, 161 n. 9 (Tex.Crim.App. 2006). In determining whether sufficient evidence links the appellant to the contraband, the appellate court considers a variety of factors, including: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contra-band or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* at 162 n. 12.

In this case, appellant is linked to the contraband by testimony that appellant was staying at the house and received mail there, the officers saw appellant come out of the back bedroom where marijuana was found in plain view, the bulk of the methamphetamine was in the bathroom next to the back bedroom, appellant's presence in the living room where methamphetamine was in plain view, appellant's statements to the officers that he had touched some of the bags of marijuana, and appellant's testimony that he had clothing in the back bedroom. Appellant's knowledge that the substances were contraband was established by appellant's testimony that he was familiar with marijuana and methamphetamine. After considering all the evidence under the relevant standards of review, we conclude the evidence is legally and factually sufficient to support appellant's convictions for possession of marijuana and methamphetamine. We overrule appellant's second, third, and fourth issues.

## CRUEL AND UNUSUAL PUNISHMENT

 In the fifth issue, appellant contends the sentences in these cases are cruel and unusual in violation of the Eighth Amendment. Appellant asserts he has AIDS and that the penitentiary does not provide treatment for that medical condition, thereby making his term of imprisonment effectively a death sentence. Appellant did not complain about the sen-

tences either at the time they were imposed or in his motions for new trial. *See* Tex.R.App. P. 33.1(a)(1); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex.App.-Dallas 2003, no pet.). Even constitutional rights, including the right to be free from cruel and unusual punishment, may be waived. *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex.Crim.App.1996); *Castaneda*, 135 S.W.3d at 723. Because appellant did not object to the sentences at the time they were imposed, he has not preserved any error for appellate review. *Castaneda*, 135 S.W.3d at 723.

Moreover, the trial court sentenced appellant to fifteen years in the first degree felony cases, ten years in the second degree felony cases, and two years in the case of the state jail felony punished as a third degree felony, all of which are within the statutory punishment ranges for the offenses. *See* Tex. Pen.Code Ann. §§ 12.32, .33, .34 (Vernon 2003), § 12.35(c)(1) (Vernon Supp.2007); *Kirk v. State*, 949 S.W.2d 769, 772 (Tex.App.-Dallas 1997, pet. ref'd). As long as the punishment is within the range prescribed by the legislature in a valid statute, the punishment is not excessive, cruel, or unusual. *Castaneda*, 135 S.W.3d at 724. We conclude the sentences are not excessive, cruel, or unusual, and the trial court did not abuse its discretion in assessing them. We overrule appellant's fifth issue.

### DEADLY WEAPON FINDINGS

■ In the seventh issue, appellant contends the trial court erred in entering a deadly weapon finding in the new possession of marijuana case because the State did not give notice of intent to seek a deadly weapon finding.

■ Under article I, section 19 of the Texas Constitution, an accused is "entitled to notice in some form that the use of a deadly weapon will be a fact issue at the time of prosecution." *Patterson v. State*, 138 S.W.3d 643, 647 (Tex.App.-Dallas 2004, no pet.) (quoting *Ex parte Beck*, 769 S.W.2d 525, 526 (Tex.Crim.App.1989)). Where the appellant receives no written notice of the State's intent and where the indictment itself does not implicate a deadly weapon, we do not ask whether the appellant's right to notice was forfeited by mere inaction but whether the appellant's affirmative actions constitute a knowing and voluntary waiver of the appellant's right to written notice. *See Ex parte Minott*, 972 S.W.2d 760, 761–62 (Tex.Crim. App.1998).

Appellant received no express written notice in the cause number of the possession of marijuana case that the State intended to seek a deadly weapon finding. At the conclusion of the State's case, the prosecutor told the trial court the State had filed notices of intent to seek deadly weapon findings in both the possession of methamphetamine and possession of marijuana cases. At sentencing, the trial court stated it would enter deadly weapon findings in both cases. Appellant's counsel did not respond to either statement. On appeal, appellant asserts the State's failure to give express written notice in the cause number of the possession of marijuana case violated his constitutional right to notice and requires that this Court delete the finding from the judgment.

Appellant, however, did have express written notice that the State intended to seek a deadly weapon finding in the new possession of methamphetamine case. Both of the new possession cases arose out of the same criminal episode, appellant's possession of contraband in the back part of the house, and involved the same issue, whether appellant possessed the contraband found at the back of the house. The court of criminal appeals faced a similar situation in *Ex parte Brooks*, 847 S.W.2d

247 (Tex.Crim.App.1993).[2] There, the defendant was charged in separate indictments with burglary of a habitation and aggravated sexual assault, and both offenses arose out of the same criminal episode. The State filed notice of intent to seek a deadly weapon finding in the aggravated sexual assault case but did not file such a notice in the burglary case. *Id.* at 248. As part of a plea bargain, the aggravated sexual assault charge was dismissed and appellant pleaded guilty to the burglary charge. The trial court entered a deadly weapon finding on the conviction of burglary of a habitation. The defendant then sought a writ of habeas corpus to set aside the deadly weapon finding, asserting he did not receive notice of the State's intent to seek a deadly weapon finding in the burglary case. *Id.* The court of criminal appeals resolved the issue against the defendant, reasoning that "when the State agreed not to prosecute under the aggravated sexual assault indictment, that did not vitiate notice that the State intended to show use of a deadly weapon during the criminal episode and seek the finding." *Id.* at 249. The court also stated, "Such notice need not be contained in the indictment under which the defendant is ultimately tried. Rather, the defendant is simply 'entitled to notice in some form that the use of a deadly weapon will be a fact issue at the time of prosecution.' " *Id.* at 248 (citation omitted) (quoting *Ex parte Beck*, 769 S.W.2d at 526). Likewise, in this situation, we conclude the written notice in the new possession of methamphetamine case was sufficient to put appellant on notice that the State sought deadly weapon findings as to the entire criminal episode, including the new possession of marijuana case. We overrule appellant's seventh issue.

In the sixth issue, appellant asserts the deadly weapon findings in the new possession of marijuana and possession of methamphetamine cases are not supported by sufficient evidence. In determining the sufficiency of the evidence to support a finding that the defendant used or exhibited a deadly weapon during the commission of a felony offense, we must determine "whether a rational trier of fact could find beyond a reasonable doubt that the mere possession of firearms facilitated the associated felony." *Gale v. State*, 998 S.W.2d 221, 224 (Tex.Crim.App.1999); *Smith v. State*, 176 S.W.3d 907, 918 (Tex. App.-Dallas 2005, pet. ref'd). A deadly weapon may be "used" even if it is merely possessed, if that possession facilitates the associated felony offense. *Smith*, 176 S.W.3d at 919. In this case, the guns were found in the back bedroom's closet, and the police saw appellant leave the back bedroom when they arrived. Appellant testified he had clothes in the back bedroom. The marijuana was in plain view on the floor of the back bedroom. The back bedroom was next to the back bathroom, which is where the bulk of the methamphetamine was found. The guns were within reach of appellant when he was in the back bedroom and would have facilitated his possession of the marijuana in the back bedroom and his possession of the methamphetamine in the bathroom immediately adjacent.

Appellant cites three cases where the courts found the deadly weapon findings were not supported by sufficient evidence. Each of the cases is distinguishable. In *Wynn v. State*, 847 S.W.2d 357 (Tex.App.-Houston [1st Dist.] ), *aff'd*, 864 S.W.2d 539 (Tex.Crim.App.1993), the court concluded

---

**2.** Neither the State nor appellant cited to this controlling authority from the court of criminal appeals.

that no evidence supported a deadly weapon finding because the appellant was not associated with the room in which the guns were found. *Id.* at 360–61. In this case, appellant was seen leaving the room where the guns were found, and he testified he had clothes in that room. In *Jackson v. State*, 857 S.W.2d 678 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd), the police searched a house and found cocaine and guns. *Id.* at 682. The appellant was not in the house when the police first visited and obtained the information leading to the search warrant, nor was she in the house when the police returned to search it. *Id.* In this case, however, when the police arrived at the residence, appellant was in the room with the closet containing the guns. In *Rodriquez v. State*, 880 S.W.2d 443 (Tex.App.-Dallas 1994, pet. ref'd), the appellant was charged with delivery of cocaine. *Id.* at 444. In that case, an undercover officer went to an apartment and told appellant he wanted two pills of cocaine for twenty dollars. The appellant had only one pill, which he delivered to the officer taking the officer's twenty dollars, and the appellant told the officer to return in twenty minutes when the appellant would have received a new shipment. *Id.* When the officer returned twenty minutes later, the appellant appeared not to recognize the officer and pulled a gun on the officer to make him leave the apartment. *Id.* at 445. In this case, however, the officers made only one visit to the house. The presence of the guns in the closet of the room from which appellant emerged when the police arrived and next to the room where the metham-

phetamine was hidden facilitated appellant's possession of the methamphetamine.

We conclude the evidence is sufficient to support the trial court's deadly weapon finding in the new marijuana and methamphetamine cases. We overrule appellant's sixth issue.

## ERRORS IN THE JUDGMENTS

The sentences in two of the written judgments vary from the trial court's oral pronouncement of sentence. In cause numbers 05–06–01613–CR and 05–06–01614–CR, the trial court's pronouncement of sentence included a fine of $1500 in each case; the written judgments omit the fine. In cause number 05–06–01614–CR, the trial court's orally pronounced sentence of confinement was two years; the written judgment imposes confinement for ten years.[3] When the oral pronouncement of sentence in open court and the written judgment conflict, the oral pronouncement controls. *Thompson v. State*, 108 S.W.3d 287, 290 (Tex.Crim.App.2003). The solution is to modify the written judgment to conform to the sentence orally pronounced. *Smith*, 176 S.W.3d at 920.

We have the authority to modify an incorrect judgment when we have the necessary data and information to do so. Tex. R.App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex.Crim.App.1993); *McCoy v. State*, 81 S.W.3d 917, 920 (Tex. App.-Dallas 2002, pet. ref'd). Accordingly, we modify the judgment in cause number 05–06–01613–CR to reflect the $1500 fine orally pronounced, and we affirm the trial

---

**3.** The record shows the trial court initially thought appellant was to be sentenced for a state jail felony in the possession of marijuana case, and the court sentenced appellant to "two years in state jail, $1,500 fine." When the prosecutor pointed out that the possession of marijuana case was punished as a third degree felony because of the deadly weapon finding, the court stated, "Think you're correct. I'll leave it at two years, having already assessed that. Leave it at two years." The court then ordered appellant be transferred to the receiving agent for the Institutional Division of the Texas Department of Criminal Justice and "kept in prison until those sentences served, otherwise discharged."

court's judgment as modified. We modify the judgment in cause number 05–06–01614–CR to provide that appellant's punishment and place of confinement is "2 Years Institutional Division, TDCJ" and to reflect the $1500 fine orally pronounced, and we affirm the trial court's judgment as modified. We affirm the trial court's judgments in the remaining causes.