**Affirmed as Modified and Opinion Filed July 16, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-17-00015-CR**

**HUGH EDWARD TURNER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 194th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F15-75929-M**

# MEMORANDUM OPINION

Before Justices Francis, Fillmore, and Whitehill
Opinion by Justice Whitehill

A jury convicted appellant Hugh Edward Turner of murdering Andrew Johnson. The trial court assessed punishment at sixty years' imprisonment. Appellant raises two issues, each asserting jury charge error. The State raises one cross-point concerning mistakes in the judgment. We overrule appellants' issues, sustain the State's cross-point, modify the judgment, and affirm the judgment as modified.

## I. BACKGROUND

### A. Facts

The trial evidence supported the following facts:

The complainant, twenty-one year old Andrew ("Drew") Johnson, was fatally stabbed at around 12:45 a.m. on July 4, 2015. The stabbing took place outside a 7-Eleven store in northeast Dallas.

Two witnesses to the incident testified at trial. One was Johnson's friend Shawn Williams, who testified to the following facts: On the night of July 3–4, 2015, Williams was hanging out with Johnson, Williams's girlfriend Phantazia Garrett, and Williams's infant daughter. After going to see fireworks, the four of them went to the 7-Eleven in Garrett's car.

Several other people were hanging out in the 7-Eleven parking lot, and Williams's group joined them. Williams, Johnson, and Garrett were drinking vodka. Johnson had a "silver and black .9 millimeter" gun, and at Williams's suggestion he threw it into the car. Williams also had a gun, which he also left in the car.

Appellant walked into the parking lot from a nearby apartment complex, physically bumped into Johnson and a few other people, and walked away towards the 7-Eleven. Then appellant came back and said he wanted to fight Johnson. Appellant tried to punch Johnson, who told Williams to intervene. Appellant hit Williams, and Williams hit appellant back and knocked him to the ground. Then appellant got up and walked away while Johnson started talking to a woman.

Williams got back into Garrett's car and was counting his money when he looked up and saw appellant take a swing at Johnson. Johnson took a swing at appellant and then walked towards Williams holding his side. Johnson passed out, and Williams caught him. Williams saw blood gushing out of Johnson.

As appellant was walking towards Williams and Johnson, Williams grabbed both guns out of the car and started shooting at appellant, who then ran away.

Williams, however, also testified that he had prior convictions for theft, refusing to identify himself to a police officer, and drug offenses.  Furthermore, in exchange for his testimony, he was receiving immunity for possession of illegal drugs that were found in Garrett's car, for the shootings he committed, and for other punishable offenses such as tampering with evidence.

Garrett also testified.  She confirmed that she was at the 7-Eleven with Johnson, Williams, and Williams's baby.  She said the first thing she saw related to this case was that Johnson "had a small tussle with a guy."  She went to the car to get her phone so she could record it, but by the time she got her phone it was over and the other person had walked off.  Later she saw Johnson talking to a woman.  Then she saw "the guy" come back.  She called out, "Drew," when she saw the guy getting closer to Johnson, who stood up when he heard her.

Garrett's testimony about what happened next was unclear:

Q    Did you see this guy swing at Drew?

A    No.

Q    You didn't see him swing, no?

A    Like when he got up, yeah, he swung; but I didn't know what he was doing.

Q    I want to be clear, Phantazia, the person that you saw swing, was it Drew or the guy that had just walked up to him?

A    It was the guy that had just walked up.

Q    And did you see him hit [D]rew when he swung?

A    No.

Q    What did Drew do after that guy swung?

A    He had came to the car.

Q    And did he walk—did he walk from where he had just stood up . . . over to your car?

A    Yeah. He walked to the car and leaned over and that's when two blood drops had dropped in my car.

Then Williams said that Johnson had been stabbed.  Johnson fell down, and Garrett called 911.

–3–

A security guard named Cody Welch also testified. He drove through the 7-Eleven parking lot just before the incident, saw a large group of people there, and specifically saw Johnson walking towards the 7-Eleven. About ten seconds later, he heard gunshots. He saw a black male with his shirt draped over his shoulder walking towards some nearby apartments. Then he saw someone else running towards him and firing a gun in his direction. The shooter then ran away, and Welch called 911. He also rendered first aid to Johnson, whom he described as being "[u]nconscious, not responding, but still attempting to breathe."

Other evidence showed that police officers found a suspected blood trail leading away from the crime scene to an apartment complex. The trail led the police up a stairway to an apartment door. The police knocked on the door, and the man who answered said that (i) the police were looking for his brother, whom he identified by name as appellant, (ii) appellant was bleeding from his hand, and (iii) appellant had gone to the hospital with his mother.

The police then located appellant at Presbyterian Hospital. He had checked in there at about 2:30 a.m. with no injuries except a 2.5 centimeter cut on his right index finger. He told medical personnel that he had been in a fight "with several guys" at a 7-Eleven and that his injury was "gang related." Appellant was arrested at the hospital.

Investigators found an aluminum can at the crime scene with appellant's fingerprint on it. A handgun—apparently a 9mm handgun recovered from the crime scene—was subjected to DNA testing, and DNA samples matching Johnson's DNA profile were recovered from it. Johnson's blood was also found on the gun. Both appellant and Williams were excluded from the DNA samples.

A medical examiner testified that Johnson died from a stab wound to the chest. The examination also revealed small abrasions on his body, including some that could have been

–4–

caused by a fall to the ground or by a fight. Testing showed that Johnson's blood–alcohol level was .219. Marijuana constituents were also found in his blood.

Appellant offered and the trial court admitted an excerpt from a hearing transcript in which Johnson's mother testified about a conversation she had with Williams after Johnson's death:

Q       So [Williams] told you that he was sorry. And [Williams] told you that [Johnson] said, I am going to go play with him, talking about [appellant]?

A       Yes. He kept egging him on. Not [Williams], but the guy wanted to fight my baby. And then [Williams] said that [Johnson] had already knocked him out and he wanted to fight again. And he said, okay, I am going to play with him now.

Q       Okay, okay. So that [Johnson] had already knocked him out, and then he said I am going to go play with him?

A       Cause he kept coming up there trying to fight him some more.

But at trial, Johnson's mother testified that on the night of the incident, Williams did not tell her about Johnson's knocking appellant out. She testified instead that she heard that fact later "from the streets."

## B.      Procedural History

A grand jury indicted appellant for murder. The indictment also alleged two prior felonies as enhancements. Appellant elected to have the trial judge assess punishment.

The jury charge included self-defense instructions. The jury found appellant guilty of murder.

After  the punishment hearing, the trial court sentenced appellant to sixty years' imprisonment. Appellant timely appealed.

## II.  APPELLANT'S ISSUES

Appellant raises two issues, each involving alleged charge error.

A.      **Standard of Review**

We use a two-step process to review a jury charge error claim.  First, we determine if the charge was erroneous.  If error exists, we then determine whether the error caused sufficient harm to require reversal.  *See Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015).

If the defendant preserved error, a charge error requires reversal if it was calculated to injure the defendant's rights, which means no more than that the error must have caused some harm to the defendant.  *Madden v. State*, No 05-17-00067-CR, 2018 WL 1373956, at *1 (Tex. App.—Dallas Mar. 19, 2018, no pet.) (mem. op., not designated for publication).

If the defendant did not object to the error, he must show egregious harm to obtain reversal. An error causes egregious harm if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.  *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013).

In determining whether error was harmful, we consider the entire jury charge, the closing arguments, the state of the evidence, and any other relevant information revealed by the record as a whole.  *Goodson v. State*, No. 05-15-00143-CR, 2017 WL 1360193, at *9 (Tex. App.—Dallas Apr. 12, 2017, pet. ref'd) (mem. op., not designated for publication).

B.      **Issue One:  Was the jury charge's reference to "the guilt or innocence of the defendant" an egregiously harmful error?**

Appellant's first issue focuses on the jury charge's penultimate paragraph, which read:

> Your sole duty at this time is to determine the ***guilt or innocence*** of the defendant under the indictment in this cause and restrict your deliberations solely to the issue of ***guilt or innocence*** of the defendant.

(Emphases added.)  Appellant argues that the phrase "guilt or innocence" shifted the burden of proof onto him and effectively compelled the jury to choose between guilt and actual innocence instead of properly focusing the jury on whether the State had carried its burden to prove

appellant's guilt beyond a reasonable doubt. He did not object to the instruction at trial. We reject appellant's argument because (i) there is no error; and, (ii) if there was error, it was harmless.

First, we follow our sister courts' decisions in concluding that an instruction of this type in similar charges are not erroneous. *See Avila v. State*, 15 S.W.3d 568, 576–77 (Tex. App.—Houston [14th Dist.] 2000, no pet); *Flores v. State*, 920 S.W.2d 347, 357 (Tex. App.—San Antonio 1996), *pet. dism'd, improvidently granted*, 940 S.W.2d 660 (Tex. Crim. App. 1996) (per curiam); *Barnes v. State*, 855 S.W.3d 173, 175 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd).[1]

Second, any error was harmless. Our recent decision in *Madden v. State* involved the same alleged charge error. We assumed without deciding that the charge was erroneous and addressed whether the error was harmful. The defendant had preserved error, so we applied the lower "some harm" standard to the assumed error. We concluded that any error was harmless. *Madden*, 2018 WL 1373956, at *1–3. Here, we hold that the error, if any, did not cause appellant egregious harm.

We first consider the charge as a whole. As in *Madden*, the jury charge here contained proper instructions regarding the burden of proof:

> In all criminal cases, the burden of proof is on the State. All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. . . . The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all the evidence in the case.

> The prosecution has the burden of proving the defendant guilty, and it must do so by proving each and every element of the offense charged beyond a reasonable doubt; and if it fails to do so, you must acquit the defendant.

These instructions mitigated any defect in the challenged instruction. The jury charge as a whole weighs against a finding of egregious harm.

---

[1] Additional unpublished sister court opinions are to the same effect.

Next, we consider the lawyers' arguments. Appellant argues that he was harmed because his lawyer never argued that he was actually innocent but instead attacked the State's witnesses' credibility and argued that he was not guilty on self-defense grounds. But neither side argued that appellant was required to prove his innocence. Defense counsel reminded the jury that the State had the burden of proof by making arguments such as this: "[Y]ou heard the Judge read to you that in all criminal cases, the burden is on the State. . . . You heard the Judge say that the burden never shifts to the defendant." Thus, the closing arguments in this case weigh against egregious harm.

The third factor is the state of the evidence. The evidence identifying appellant as Johnson's assailant was strong. The evidence of self-defense was not. Furthermore, we find nothing in the evidence to suggest that the jury charge's two references to appellant's "guilt or innocence" caused egregious harm.

Finally, we consider any other relevant factors. Although appellant identifies none; we note that the trial court referred to the State's burden of proving appellant guilty beyond a reasonable doubt several times during voir dire, which mitigates any harm from the alleged charge error. *See Madden*, 2018 WL 1373956, at *2.

We hold that the complained-of instruction was not error; and, even had it been, it did not cause appellant egregious harm. Accordingly, we overrule his first issue.

## C. Issue Two: Did the trial court commit harmful error when it instructed the jury on self-defense?

Within issue two, appellant argues two distinct charge errors. We discuss each in turn.

### 1. Failure to Give a Requested Instruction

We first address the trial court's refusal to give an instruction the appellant requested at the jury charge conference.

Appellant objected to the jury charge's application paragraphs setting forth the law of murder because the application paragraph did not contain a separate instruction regarding the

State's burden of proof as it concerns self-defense. We quote several paragraphs of the charge to put appellant's objection into context:

### APPLICATION OF THE LAW OF SELF-DEFENSE

Now, bearing in mind the foregoing definitions and instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, HUGH EDWARD TURNER, on or about the 4th day of July, 2015, in the County of Dallas and State of Texas, did unlawfully then and there intentionally or knowingly cause the death of ANDREW JOHNSON, an individual, by stabbing the deceased with an unknown object, a deadly weapon, the exact nature and description of which is unknown to the grand jury,
or further did unlawfully then and there intend to cause serious bodily injury to ANDREW JOHNSON, and did then and there commit an act clearly dangerous to human life, to wit: by stabbing the deceased with an unknown object, a deadly weapon, the exact nature and description of which is unknown to the grand jury, but you further find from the evidence that, viewed from the standpoint of the defendant at the time, from the words or conduct or both of ANDREW JOHNSON, it reasonably appeared to the defendant that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of ANDREW JOHNSON, and that acting under such apprehension, he reasonably believed that the use of deadly force on his part was immediately necessary to protect himself against ANDREW JOHNSON's use or attempted use of unlawful deadly force, and he stabbed the said ANDREW JOHNSON, then you should acquit the defendant on the grounds of self-defense; or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on the occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict "not guilty."

### CONSTITUTIONAL RIGHT

[One paragraph of instructions regarding defendant's election not to testify.]

### APPLICATION OF THE LAW

Now, bearing in mind the foregoing instruction, if you find from the evidence beyond a reasonable doubt that on or about the 4th day of July, 2015, in Dallas County, Texas, the Defendant, HUGH EDWARD TURNER, did unlawfully then and there intentionally or knowingly cause the death of ANDREW JOHNSON, an individual, hereinafter called deceased, by stabbing the deceased with an unknown object, a deadly weapon, the exact nature and description of which is unknown to the grand jury,
or further did unlawfully then and there intend to cause serious bodily injury to ANDREW JOHNSON, hereinafter called deceased, and did then and there commit an act clearly dangerous to human life, to wit: by stabbing deceased with an unknown object, a deadly weapon, the exact nature and description of which is unknown to the grand jury, and did thereby cause the death of ANDREW

> JOHNSON, an individual, then you will find the defendant guilty of the offense of murder, as charged in the indictment, and you will make no finding in your verdict as to punishment.
>
> In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit the defendant and say by your verdict "not guilty."

At the charge conference, appellant objected to the application of law paragraphs regarding murder as follows:

> And I believe that's a misstatement of law based on the addition of self-defense to the charge. I believe we should include language at the end of that [i.e., the application paragraphs applying the law of murder] to say that not only do they have to have found beyond a reasonable doubt all the elements of the offense of murder, but that they should also find beyond a reasonable doubt that the State has disproven self-defense. That is an actual correct statement of law. So we object to the charge as it currently stands without that addition.

On appeal, appellant characterizes his trial court objection as requesting an instruction based on Penal Code § 2.03(d), which provides, "If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted." TEX. PENAL CODE § 2.03(d). But the charge already contained a § 2.03(d) instruction within the self-defense instructions:

> [I]f you have a reasonable doubt as to whether or not the defendant was acting in self-defense on the occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict "not guilty."

The trial court's refusal to repeat the § 2.03(d) instruction after the murder application paragraphs was not error. *See Spiars v. State*, 50 S.W. 947, 948 (Tex. Crim. App. 1899) (it was not error to refuse to repeat adequate jury instructions on circumstantial evidence).

Moreover, appellant actually asked for a slightly different instruction—one expressly telling the jury that the State had the burden of disproving self-defense. We have held that the trial court is not required to give such an instruction. *Goodson*, 2017 WL 1360193, at *11–12; *Gonzalez v. State*, No. 05-13-00630-CR, 2014 WL 3736208, at *14 (Tex. App.—Dallas July 14, 2014, no pet.) (not designated for publication).

We therefore reject appellant's first argument within issue two.

## 2.	Use of the Word "Should"

Appellant's other argument is that the trial court erred in the § 2.03(d) instruction by using the word "should," which appellant characterizes as merely "suggestive" and therefore inadequate to implement § 2.03(d).  Appellant did not make this objection at trial, so the egregious harm standard applies to this argument.

We hold that the trial court did not err by using the word "should" instead of a different, more emphatic word.  "Should" is used to indicate obligation, duty, or correctness.  *Should*, THE NEW OXFORD AMERICAN DICTIONARY (2001).  The instruction adequately conveyed that the jury was required to acquit appellant if it had a reasonable doubt as to self-defense.  *See Brotherton v. State*, 666 S.W.2d 126, 128 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd) (stating that a substantially similar charge "required" the jury to acquit the defendant if it had a reasonable doubt on self-defense).

Alternatively, even if using the word "should" was erroneous, we conclude that the error did not cause appellant egregious harm.  The charge as a whole militates against an egregious harm finding.  It properly instructed the jury that (i) the State bore the burden of proving appellant guilty and (ii) appellant did not have to "prove his innocence or produce any evidence at all."

The closing arguments also weigh against an egregious harm finding.  The State did not argue that the jury could find appellant guilty even if it had a reasonable doubt on self-defense.  Appellant's counsel argued that the jury had to acquit appellant if it had a reasonable doubt on self-defense.

We have reviewed the evidence as a whole, and we find nothing to suggest that using the word "should" in the self-defense instructions had any effect on the case's outcome.

–11–

Seeing no other relevant factors, we conclude that any error in using the word "should" in the self-defense instruction did not cause appellant egregious harm.

We reject appellant's second argument and overrule his second issue.

### III.  CROSS-POINT

The judgment contains spaces for indicating pleas and findings for two enhancement paragraphs.  Each space is filled in "N/A."

However, the indictment contained two enhancement paragraphs, one for unlawful firearm possession and the other for burglary.  Appellant pled true to those paragraphs, and the trial judge found that they were true.  The State asks us to correct the judgment as to the enhancement paragraphs.

We can modify an incorrect judgment when given the necessary information.  *Davis v. State*, 323 S.W.3d 190, 198 (Tex. App.—Dallas 2008, pet. ref'd).  Accordingly, we modify the judgment as the State requests.

### IV.  DISPOSITION

We modify the judgment to reflect that (i) appellant pled true to the two enhancement paragraphs and (ii) the trial court found that the enhancement paragraphs were true.  Otherwise, we affirm the judgment as modified.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
170015F.U05

–12–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

HUGH EDWARD TURNER, Appellant

No. 05-17-00015-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F15-75929-M.
Opinion delivered by Justice Whitehill.
Justices Francis and Fillmore participating.

Based on the Court's opinion of this date, we **MODIFY** the judgment to reflect that:

- The plea to the 1st enhancement paragraph was "True";
- The finding on the 1st enhancement paragraph was "True";
- The plea to the 2nd enhancement/habitual paragraph was "True"; and
- The finding on the 2nd enhancement/habitual paragraph was "True."

As modified, the judgment is **AFFIRMED**.


Judgment entered July 16, 2018.