**AFFIRM; and Opinion Filed July 15, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00387-CR

**HECTOR MANUEL TOLEDO-ARGUETA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-82111-2013**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

Appellant was indicted for both continuous sexual abuse of a child under the age of

fourteen and for aggravated sexual assault of a child under the age of fourteen.[1] Appellant pled

---

[1] The indictment alleged as follows:

[D]uring a period that was 30 days or more in duration, committed two or more acts of sexual abuse against . . . (D.F.) . . ., said acts of sexual abuse having been violations of one or more of the following penal laws, including:

aggravated sexual assault of a child, intentionally and knowingly cause the female sexual organ of . . . (D.F.) . . ., a child then younger than fourteen (14) years of age, and not the spouse of the defendant, to contact the male sexual organ of the defendant;

AND/OR

aggravated sexual assault of a child, intentionally and knowingly cause the female sexual organ of . . . (D.F.) . . ., a child then younger than fourteen (14) years of age, and not the spouse of the defendant, to contact the mouth of the defendant;

and each of the aforementioned acts of sexual abuse were committed on more than one occasion and, at the time of the commission of each of the acts of sexual abuse, the defendant was seventeen (17) years of age or older and . . . (D.F.) . . ., was a child younger than fourteen (14) years of age.

guilty to the offense of aggravated sexual assault of a child as part of an "open plea" agreement with the State. The trial court found appellant guilty on his plea. Because there was no plea bargain agreement as to sentencing, the trial court held a hearing on the sole issue of punishment. Following that hearing, the trial court sentenced appellant to thirty-five years imprisonment.

## Background

At the punishment hearing, D.F., who was twenty-one at the time of trial, testified that appellant had been her mother's boyfriend when she was eleven years old. In the mornings before she went to school, when her mother was at work, appellant would "perform sex acts" on her. Specifically, appellant, who would be naked, would take off D.F.'s clothes and they would end up on a bed. Appellant would hold D.F. down by her wrists, lick her vagina, and rub his penis on her vagina. This happened multiple times over the course of several months, possibly as often as every day. Penetration, however, did not occur.

D.F. testified that she felt ashamed, embarrassed and disgusting.  She made outcry when, in high school, she participated in a forensic interview for "similar-type things" that had occurred between her sister and their biological father.[2]

D.F. testified that these events had adversely impacted her life. She could not "really trust anyone" or figure out who she was. She did not know if she wanted children or if she could even live a full life. She did not want this to happen to anyone else.

Yolanda Castaneda, D.F.'s mother, testified that she dated appellant for about a year and that he'd lived with her and her children for more than six months. She knew that appellant was from Honduras and had a daughter there, though she did not know much about what his life had been like in Honduras.

---

[2] Testimony was heard that D.F.'s biological father had been convicted of sexually abusing this sister. There was no evidence that he had assaulted D.F.

Castaneda testified that appellant made a living selling drugs. Castaneda also testified that appellant hit her on one occasion, slapped her in the face, pulled her hair and broke one of her fingers. Appellant left her home when she called the police "due to domestic violence." Appellant did not return to her home after that.

Castaneda testified that appellant had caused irreparable harm to her daughter. D.F. was very depressed and had undergone therapy for the six months preceding trial. Castaneda testified that she did not feel that appellant should be placed on community supervision because D.F. would not feel safe "knowing that he's . . . on the streets." Castaneda also expressed the opinion that D.F. would feel that justice had not been done for her if appellant was placed on community supervision.

Appellant testified that he was born in Honduras. His father abandoned the family when appellant was six years old. Because the family did not have enough money to pay for school, appellant completed only the third grade. Appellant came to the United States in 2003 when he was seventeen years old because he was being pressured to join a gang in Honduras. He worked from 2005 until 2008 at La Michoacana, a grocery store. He denied that he had been selling drugs. After he pled guilty to assaulting Castaneda, he served thirty days in jail before being deported back to Honduras. Appellant reunited with his wife and daughter in Honduras and started a business buying and selling gold with money he had saved in the United States. At some point, a local gang demanded he pay 12,000 pesos a month. Appellant made one payment. When the gang demanded more money, he attempted to return to the United States but was arrested and detained by immigration officials.[3] Appellant testified that he had never had any trouble with the Honduran police and had never been to jail in that country. He understood that he was facing deportation but he feared to return to Honduras. Appellant testified that he wanted to go to Panama, Mexico or Costa Rico; he had no intention of ever returning to the United States.

---

[3] At the time of the punishment hearing, Appellant had been in federal detention for 500 "odd days."

While appellant admitted that he had committed the acts of aggravated sexual assault as alleged in the indictment, he testified that D.F. and Castaneda were "inventing a lot of things." He denied that he ever broke Castaneda's finger and stated that Castaneda made up the story to get him into trouble.

## Appellant's Allegations and State's Response

In his first issue, appellant claims that his thirty-five year prison sentence was grossly disproportionate to the offense of aggravated sexual assault of a child and thereby violated the constitutional prohibition against cruel and unusual punishment. In his second issue, appellant claims that the trial court abused its discretion by failing to consider the mitigating evidence he presented at the punishment hearing. Appellant asks this Court to reverse and remand for a new punishment hearing.

The State responds that appellant has not preserved these issues for appellate review because he did not object to the sentence at the time it was imposed or raise the issues he now urges on appeal in his motion for new trial. The State further responds that the trial court did not abuse its discretion by sentencing appellant to thirty-five years imprisonment because (1) appellant's sentence is well within the statutory punishment range, (2) the trial court's decision is supported by the evidence, and (3) there is no evidence that the trial court refused to consider appellant's mitigating evidence.

## The Sentence is not Disproportionate

In his first issue, appellant claims that his thirty-five year prison sentence was grossly disproportionate to the offense of aggravated sexual assault of a child and thereby violated the constitutional prohibition against cruel and unusual punishment.

To preserve error for appellate review, the record must show that appellant made a timely request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). Constitutional rights, including the right

to be free from cruel and unusual punishment, may be waived. *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Davis v. State*, 323 S.W.3d 190, 196 (Tex. App.—Dallas 2008, pet. ref'd). Here, appellant did not object on grounds of disproportionality when the trial court pronounced sentence, even though the trial court afforded appellant that opportunity.[4] Nor did appellant raise this issue in his motion for new trial.[5] This Court concludes that appellant has not preserved the issue for appellate review. *Rhoades*, 934 S.W.2d at 120; *Davis,* 323 S.W.3d at 196.

Even if appellant had preserved this issue for review, this Court could not find that the sentence assessed was constitutionally disproportionate to the offense for which appellant was convicted.

The concept of proportionality in sentencing is embodied in the Eighth Amendment's prohibition of cruel and unusual punishment. U.S. CONST. amend. VIII, XIV; *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016); *see also* TEX. CONST. art. I §13. This is a narrow principle that does not require strict proportionality between the crime and the sentence imposed. *Simpson*, 488 S.W.3d at 322 (*citing Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J. concurring)). Instead, it forbids only those extreme sentences that are so "grossly disproportionate" to the crime as to amount to cruel and unusual punishment. *Id*. (*citing Ewing v. California*, 538 U.S. 11, 23 (2003)). Generally, punishment assessed within the statutory limits is not considered excessive, cruel, or unusual. *Id*. at 323.

---

[4] The record reflects the following at the time the trial court pronounced sentence:

> THE COURT: All right. At this time, based upon the plea and based upon the Court's findings, I will sentence him to 35 years in the Texas Department of Corrections with 30 – with 503 days back time credit under the terms that I previously outlined. Anything further, counsel?
>
> [THE PROSECUTOR]: Nothing from the State, Your Honor.
>
> [DEFENSE COUNSEL]: No, [Y]our Honor.

[5] The motion for new trial alleged only that "[t]he sentence in this cause is contrary to the law and the evidence" and that the trial court had discretion to grant a new trial "in the interests of justice."

To determine whether a sentence for a term of years is grossly disproportionate for a particular crime, this Court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses. *Id.* (*citing to Graham v. Florida*, 560 U.S. 48, 60 (2010)). In the rare case in which this threshold comparison leads to an inference of gross disproportionality, this Court then compares the sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. *Id.* (*citing to Graham*, 560 U.S. at 60). It is only when this comparative analysis validates an initial judgment that the sentence is grossly disproportionate that the sentence is deemed cruel and unusual. *Id.*

Aggravated sexual assault of a child is a first-degree-felony with an available punishment range of five to ninety-nine years or life in prison.[6] *See* TEX. PENAL CODE ANN. §§ 12.32; 22.021(a)(1)(B), (a)(2)(B). The thirty-five year sentence assessed by the trial court was well within the applicable range of punishment.

The record in this case does not lead to an inference of gross disproportionality. The victim in this case, D.F., was eleven years old at the time appellant sexually assaulted her repeatedly; she suffered continuing psychological trauma as a result. Appellant's culpability for this offense was established by his guilty plea and by his admission at the punishment hearing that he had committed the acts of sexual assault alleged in the indictment. While appellant did not have a long history of prior criminal offenses, he had been convicted for assaulting D.F.'s mother. Because the sentence is supported by the evidence, this is not a rare or extreme case where it can be held that the sentence is grossly disproportionate to the offense.

---

[6] The law would also have permitted the trial court to place appellant on deferred adjudication community supervision if the trial court found it was in the victim's best interest. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.102 (a).

Additionally, appellant argues that the sentence is disproportionate because the State offered a plea bargain for a twenty year sentence prior to appellant's plea and, in argument to the trial court at the conclusion of the punishment hearing, suggested a sentence of "no less than" thirty years. At a pre-trial hearing, the State offered appellant two potential plea bargain agreements: (1) an open plea on the lesser included offense of aggravated sexual assault of a child or (2) in the alternative, a plea to aggravated sexual assault of a child and a twenty year sentence. The trial court explained to appellant that the punishment range for continuous sexual abuse of a child was "a minimum of 25 years to a maximum of 99 years or life," while the applicable range of punishment for aggravated sexual assault of a child was "a minimum of 25 years to a maximum of 99 years or life." The trial court also explained that while parole was a possibility for a conviction on aggravated sexual assault after an offender had served "one-half of their sentence or 30 years, whichever one is less," parole was not a possibility for the offense of continuous sexual abuse of a child until the offender had completed a "minimum of 25 calendar years in prison." Defense counsel told appellant that the only way to avoid the "catastrophe of 25 years minimum with no parole" was to "make a deal." Defense counsel established that appellant wanted a sentence of five years, but the State rejected that offer. Appellant also stated that he could accept "six or seven." The trial court allowed the parties some time to negotiate. Ultimately appellant accepted the offer of an open plea on the lesser included aggravated sexual assault of a child. During final jury argument on that plea, the State asked for a sentence of "not less than 30 years." Without explanation, the trial court sentenced appellant to thirty-five years imprisonment.

A trial court is not bound by a prosecutor's recommendation as to punishment. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(2). The decision of what particular punishment to assess within the statutorily prescribed range for any given offense is a normative, discretionary function of the fact-finder. *Barrow v. State*, 207 S.W.3d 377, 379–80 (Tex. Crim. App. 2006). The thirty-

five-year sentence is not made excessive merely because it exceeds the State's original offer of twenty years and the State's later argument for "not less than" thirty years. *See Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd) (holding that a sentence of seven years, which was twice as long as the sentence offered by the State, was within the applicable punishment range and not excessive). Appellant's first issue is overruled.

## Consideration of Mitigating Evidence

In his second issue, appellant claims that the trial court abused its discretion by failing to consider the mitigating evidence he presented at the punishment hearing.

Appellant's failure to raise any objection to the punishment assessed either at trial or in his motion for new trial is not a procedural bar to this issue. The right to be sentenced by a neutral and detached magistrate who properly considers the entire range of punishment is a substantive right "necessary to effect the proper functioning of our criminal justice system." *Grado v. State*, 445 S.W.3d 736, 741 (Tex. Crim. App. 2014). Absent an affirmative and effective waiver of that right, the issue may be raised for the first time on appeal. *Id*. at 742-43.

A trial court denies a defendant due process when it arbitrarily refuses to consider the entire range of punishment. *Id*. at 739. Absent a clear showing of bias, this Court presumes that the trial court was neutral and detached and that it did not act arbitrarily. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). Bias is not shown when (1) the trial court hears extensive evidence before assessing punishment, (2) the record contains explicit evidence that the trial court considered the full range of punishment, and (3) the trial court made no comments indicating consideration of less than the full range of punishment. *Id*.

Appellant claims that the trial court did not seriously consider the mitigating evidence that he offered. Appellant claims that, through his testimony, he showed that he had suffered a difficult

life in Honduras,[7] he had been denied an education, he had been pressured to join a gang (which he resisted by coming to the United States) and subjected to threats of gang violence, he had been previously deported, and he feared a return to Honduras. He had already served over 500 days in federal detention. Appellant also claims that he established that he was hardworking, both in Honduras and in the United States, had only one prior offense, and was only twenty-one or twenty-two at the time he committed this crime.

At the punishment hearing, the trial court judge made no comments which suggest that he refused to consider appellant's mitigating evidence. In fact, appellant provided lengthy testimony in support of his request for deferred adjudication and defense counsel argued for a deferred sentence to the trial court.[8] After the State presented its argument, the trial court asked the parties to "give me just a moment." The record reflects a "[l]ong pause" in the proceedings. Without any additional comments, the trial court found appellant guilty on his guilty plea and sentenced him to thirty-five years imprisonment.

Appellant points to nothing in the record that indicates the trial court refused to consider his mitigating evidence. Notably, his defense counsel told the trial court that he was not offering appellant's difficult life in Honduras as mitigating evidence. The fact that appellant presented additional mitigating evidence—such as serving over 500 days in jail, his relative youth at the time of the offense, his work ethic, and his support for his families in the United States and Honduras—does not, in and of itself, support his assertion that "[t]his evidence was not taken seriously and resulted in a cruel sentence." On this record, it must be presumed that the trial court acted properly and considered all the evidence presented before sentencing appellant.

---

[7] In final argument to the court, defense counsel did not offer appellant's difficult life in Honduras as mitigation, but rather for the trial court's consideration of the effects of deportation to a country where gangs controlled many communities.

[8] Defense counsel argued in favor of deferred adjudication, in part, because it could result in an earlier deportation date than if appellant served a term of years in a Texas prison.

Because the record does not clearly show that the trial court did not consider the full range of punishment, we conclude there is no error in the sentence assessed by the trial court. We overrule appellant's second issue.

## Conclusion

The trial court's judgment is affirmed.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

180387F.U05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

HECTOR MANUEL TOLEDO-
ARGUETA, Appellant

No. 05-18-00387-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 219th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 219-82111-2013.
Opinion delivered by Justice Osborne.
Justices Myers and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 15th day of July, 2019.